UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMY L. COLVIN,

                              Plaintiff,

              - against-

STATE UNIVERSITY COLLEGE AT
FARMINGDALE, STATE UNIVERSITY OF
NEW YORK; HUBERT KEEN, President, in his
official and individual capacity; GEORGE
LAROSA, Vice President, in his official and
individual capacity; PATRICK CALABRIA,
Vice President, in his official and individual
capacity; LUCIA CEPRIANO, Vice President, in
her official and individual capacity; MARVIN
FISCHER, Chief of Police, in his official and
individual capacity; MARYBETH INCANDELA,
Director, in her official and individual capacity;
JAMES HALL, in his official and individual
capacity; and MALKA EDELMAN, in her official
and individual capacity,

                              Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
**13-CV-3595 (SJF)(ARL)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    JUN 1 9 2014    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On June 25, 2013, *pro se* plaintiff Amy L. Colvin ("plaintiff") commenced this

employment discrimination and retaliation action against defendant State University College at

Farmingdale, State University of New York ("SUNY Farmingdale") and defendants Hubert Keen

("Keen"), President of SUNY Farmingdale; George LaRosa ("LaRosa"), Vice President of

SUNY Farmingdale; Patrick Calabria ("Calabria"), Vice President of SUNY Farmingdale; Lucia

Cepriano ("Cepriano"), Vice President of SUNY Farmingdale; Marvin Fischer ("Fischer"),

Campus Chief of Police at SUNY Farmingdale; Marybeth Incandela ("Incandela"), Director of

Human Resources at SUNY Farmingdale; James Hall ("Hall"), Director of Admissions at SUNY Farmingdale; and Malka Edelman ("Edelman"), Director of Support Services at SUNY Farmingdale (collectively, "the individual defendants"), each in their official and individual capacity. On August 5, 2013, plaintiff filed an amended complaint against SUNY Farmingdale and the individual defendants (collectively, "defendants") alleging, *inter alia*, discrimination based upon age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290, 296, *et seq.*; retaliation for exercising her First Amendment rights to free speech and freedom of association in violation of 42 U.S.C. § 1983 ("Section 1983"); and violations of New York Civil Service Law ("NYCSL") § 75-b and New York Public Officers Law ("NYPOL") §§ 74(3)(d) and (h). Pending before the Court is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1), (2), (5) and (6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process and failure to state a claim for relief. For the reasons set forth below, the motion is granted in part and denied in part.

I.      Background

A.      Factual Background[1]

Plaintiff was employed by SUNY Farmingdale from August 2007 until February 27, 2013. (Amended Complaint ["Compl."], ¶ 26). From August 2007 until January 2009, plaintiff

---

[1] The following facts are taken from the amended complaint and are assumed to be true for purposes of this motion. They do not constitute findings of fact by the Court.

worked in SUNY Farmingdale's Support Services for Disabilities Department under the supervision of Edelman. (Compl., ¶ 27). According to plaintiff, beginning in September 2007, Edelman: (1) warned her, both orally and in writing, that she should not attend union meetings, even though she was the union representative for the department; and (2) acted with "great hostility" towards her, including "scream[ing] at her, curs[ing] at her, and threaten[ing] to 'kick her ass'." (Compl., ¶ 28). When plaintiff complained about the "hostile situation" created by Edelman to Incandela, Incandela allegedly told her that "nothing [could] be done and Plaintiff should 'get another job' outside the college." (Compl., ¶ 29).

According to plaintiff, during 2008, her caseload was doubled and her request for a salary increase was denied. (Compl., ¶ 30).

In October 2008, when requested by Edelman "to apply for money from a Blind and Deaf student fund for some students in need[,] [p]laintiff explained that before th[at] was done, the college had a fiduciary duty, as per the agreement with the state agency VESID [Vocational and Educational Services for Individuals with Disabilities], to return any money unused for students from the prior year." (Compl., ¶ 31). According to plaintiff, when Edelman insisted that she "do it anyway," she instead "asked for a ten-year accounting and discovered that over $10,000.00 was given to [SUNY] Farmingdale[,] [t]here was no accounting for how much was used and none of it was returned." (Id.) Plaintiff alleges that "[w]hen [Edelman] saw the above email[,] she came to the Plaintiff's office, yelling and screaming that Plaintiff was not to show that email to anyone[,]" (Compl., ¶ 32), so plaintiff wrote to Keen "regarding the * * * misappropriation and sought whistleblower protection, an investigation, and a change of departments[,]" (Compl., ¶ 33).

3

Plaintiff alleges "[u]pon information and belief, [that] an investigation was done under the supervision of the Chief Financial Officer George LaRosa, who, in an unethical manner, minimized the misappropriation so as to avoid embarrassment to his department and the college." (Compl., ¶ 34).

On or about December 2008, when Edelman requested that plaintiff "submit data based on personal performance for a Perkins III (VTEA) [Carl D. Perkins Vocational and Technical Act Programs] grant[,] [p]laintiff questioned the legitimacy and ethics of [doing that] and requested that [SUNY Farmingdale's] Administration investigate th[e] matter." (Compl., ¶ 35). According to plaintiff, "[t]he Administration under the auspices of Chief Financial Officer George LaRosa denied [her] request." (Id.)

Plaintiff alleges that from October 2008 through January 2009, Edelman "stepped up her hostility towards [her] * * * even though supervision was removed from [Edelman] and given to her supervisor, Assistant Vice-President Andrew Berger." (Compl., ¶ 36). Specifically, Edelman "libeled and slandered Plaintiff to people inside the college and outside the college calling her 'crazy' and a 'witch'." (Compl., ¶ 37). Accordingly, plaintiff wrote to Cepriano "pleading for protection from the hostile environment by Ms. Edelman and seeking whistleblower protection and a transfer." (Compl., ¶ 38). Plaintiff's request for a transfer was granted and she was transferred to SUNY Farmingdale's Admissions Department, under the supervision of Hall, in January 2009. (Compl., ¶ 39).

In May 2011, two (2) university policemen, supervised by Fischer, entered a yoga class that plaintiff was attending on campus and "demanded to talk to a fellow employee in an aggressive manner." (Compl., ¶ 41). When plaintiff intervened "and stated that she would like

4

to get the employee a union representative and a legal representative to help the employee[,] * * * [t]he police stated in an aggressive manner that the matter was not her concern and threatened to handcuff and falsely arrest [her]." (Id.) Plaintiff "immediately called her husband with a defense lawyer's number and the President of her union and relayed the threat" ("the yoga class incident"). (Id.) Plaintiff alleges "[u]pon information and belief, [that] the [yoga class] incident embarrassed the Chief of Police Marvin Fischer and his supervisor was Vice-President George LaRosa[,] [so] [t]hey sought a way to 'punish [her].'" (Compl., ¶ 42). According to plaintiff, "[u]pon information and belief, the matter was discussed with President Keen and Vice-President LaRosa and a plan to terminate [her] in regard to [the yoga class] incident was devised." (Id.)

On June 14, 2011, plaintiff was summoned to SUNY Farmingdale's Human Resources Department "for a 'disciplinary interrogation' based on the [yoga class] incident." (Compl., ¶ 43). Plaintiff alleges that after she "repeated the above version of events," and without being afforded an opportunity "to question the officers or present any witnesses[,] * * * Icandela then issued a Counseling Memo warning [her] to not involve herself in campus police business." (Id.). SUNY Farmingdale "did not suspend Plaintiff or impose other written or verbal discipline" regarding the yoga class incident. (Id.)

On July 8, 2011, Hall recommended that plaintiff be reappointed and that her contract be renewed. (Compl., ¶ 44). Nonetheless, on July 21, 2011, Cepriano "signed a notice stating that Plaintiff should not be reappointed * * *." (Compl., ¶ 45).

On July 25, 2011, Hall told plaintiff "that he was afraid she was 'stretched too thin[,]' * * * [and] was concerned about her 'activities' in Albany[] [because] [a]t that time, [she] was an alternative union delegate and on the statewide finance committee and veterans committee[] * * *

* [and] * * * [she] was on the union ballot for the committee on professional evaluations and the college review panel."[2] (Compl., ¶ 46). According to plaintiff, Hall: (1) told her "that no one in the Department attends Union Delegate Meetings in Albany and that [she] better get permission from him before she accepted a spot on the professional evaluations or college review panel[;]" and (2) "made it clear that he wanted [her] to remain in the office at all times and withdraw from all activities such as the curriculum committee, professional development, and union activities[] * * * in direct contradiction to her written performance program."[3] (Id.) Plaintiff alleges that "[w]ithout service to the college community or further professional development, [she] was effectively prevented from getting promotions, salary increases, and tenure, as such was needed to obtain all of the above as per written college protocol." (Compl., ¶ 47).

On or about the first week in August 2011, Keen sent plaintiff a letter indicating that her contract would not be renewed. (Compl., ¶ 48). According to plaintiff, "[a]s a result of the stress and injustice of the situation, [she] physically suffered losing weight and required a doctor's care." (Id.)

Although plaintiff alleges that on August 12, 2011, Hall met with her for a formal evaluation and issued a negative "and undeserved" evaluation, (Compl., ¶ 49), the actual evaluation ("the satisfactory evaluation") indicates that Hall answered "yes" to the question, "[i]n

---

[2] According to plaintiff, as an alternative union delegate for SUNY Farmingdale, she "was required to attend delegate meetings in Albany three times a year, leaving on Fridays." (Compl., ¶ 40).

[3] According to plaintiff, in 2010 and 2011, her "performance program stated that participation in campus activities, governance and campus committees were [sic] 'highly' encouraged[,] [so] [she] went on the join a college governance committee and the University Club[,] * * * attended two professional development conferences * * * and was elected as an alternative union delegate for the entire college." (Compl., ¶ 40).

6

general, has employee's overall performance been satisfactory?"[4] (Def. Mem., Appendix ("App'x") B). In addition, Hall recommended that plaintiff be reappointed. (Id.)

According to plaintiff, although campus policy indicates that "employees are to be formally reviewed based on their performance programs once a year[,] [u]pon information and belief, [she] was the only person in the department with nine counselors to be formally evaluated and suffered prejudicial and disparate treatment." (Id.) Plaintiff alleges that Hall's attitude toward her "changed sharply" following the yoga class incident because "[u]pon information and belief, [his] supervisors wanted him to come up with reasons to fire [her]." (Compl., ¶ 51).

On or about August 29, 2011, plaintiff was reappointed for another year, (Compl., ¶ 50), notwithstanding Cepriano's recommendation against reappointment and Keen's indication otherwise. Plaintiff alleges "[u]pon information and belief, [that] the administration wanted to terminate [her] based on whistleblower and union activity but could not as she had no formal negative evaluations at the time her contract notice expired." (Id.)

---

[4] The evaluation also indicated that Hall rated plaintiff "effective and competent" in two (2) of the five (5) goals and objectives evaluated and "needs improvement" on the remaining three (3) goals and objectives. (Def. Mem., App'x B). In addition, Hall rated plaintiff as "effective and competent" in the areas of "Mastery of Specialization," "Effectiveness in University Service," and "Continuing Growth," and "needs improvement" in the areas of "Effectiveness in Performance" and "Professional Ability." (Id.) In the section entitled "Employee challenges or areas for development," Hall wrote: "[plaintiff] needs to devote more time to the tasks that comprise her primary responsibility in the areas of application review and admissions counseling. She needs to become proficient in the process of making application decisions. Training will be provided in these areas as deemed necessary. [Plaintiff] also needs to be more responsive for requests of assistance from co-workers as she is not regarded to be a member of the Admissions Team by some." (Id.) In the section entitled "General comments about employee performance," Hall wrote: "[Plaintiff] needs to make significant progress during the period prior to her next evaluation in the areas mentioned above. More time should be dedicated to day-to-day Admissions Office operations with less time devoted to external committees and obligations." (Id.)

According to plaintiff, during the following academic year, i.e., 2011-2012: (1) she "was forced to withdraw as a union delegate as it was made clear by Mr. Hall that if she continued, her job was threatened[,]" although "another counselor from the department was made a delegate and did go to Albany[,]" (Compl., ¶ 52); (2) she "withdrew from the governance committee as she felt her job was threatened even though two other counselors in the department were members of other governance committees[,]" (Compl., ¶ 53); (3) Hall "took a project that [she] was responsible for on her performance program and gave it to another counselor[,]" (Compl., ¶ 54); (4) she "was criticized for being away from the office to attend professional development conferences[,] [although] another counselor in the department was permitted to attend[,]" (Compl., ¶ 55); and (5) her workload "greatly increase[d]" due to the loss of two (2) counselors in the Admissions Department, but she was denied a salary increase, a promotion and "a bonus called discretionary income, despite the fact * * * that all other counselors in the department received [such bonus]," (Compl., ¶ 63).

Plaintiff contends that on June 27, 2012, Hall performed the annual formal evaluation of her and that although "[n]o criticisms of Plaintiff's work had been made for the past 51 weeks other than two ministerial issues and Plaintiff had numerous compliments in her file for her work for the past year[,] * * * the content of the evaluation was negative." (Compl., ¶ 56). However, the actual evaluation ("the minimally satisfactory evaluation") indicates that Hall again answered "yes" to the question, "[i]n general, has employee's overall performance been satisfactory?" (Def. Mem., App'x D). In addition, Hall rated plaintiff (a) as "effective and competent" in three (3) of the five (5) goals and objectives delineated in the evaluation and as "unsatisfactory" in the other (2) goals and objectives; and (b) as "effective and competent" in the areas of "Mastery of

Specialization," "Effectiveness in University Service," and "Continuing Growth," as "needs improvement" in the area of "Professional Ability" and as "unsatisfactory" in the area of "Effectiveness in Performance." (Id.) In the section of the evaluation entitled "Employee challenges or areas for development," Hall wrote:

> "[Plaintiff] does not understand the basics of application review. She makes too many errors in the decision process and is not performing to a satisfactory level in this area. On June 11, 2012, she denied an applicant eligible for admission and did not have an adequate explanation for the decision that was made.
>
> Also, the recent discovery of a barcode scanner that was taken by her in error from the National NACAC College Fair proves that she doesn't understand the ramifications of such actions. The fact that the scanner was not discovered until a two-month period had passed is also cause for great concern. A considerable investment was made to attend this fair and the scanner holds all the contact data for the prospective students who met with members of the Admissions and EOP staff on that date."

(Id.) In the section entitled "General comments about employee performance," Hall wrote: "[plaintiff's] performance is minimally satisfactory." (Id.) Hall did not make a recommendation regarding plaintiff's reappointment on the evaluation. (Id.) However, plaintiff alleges that Hall advised her that "he was not going to recommend her for reappointment[] [because] [u]pon information and belief, he was pressured by his supervisors to do [that]." (Id.) According to plaintiff, she "asked to appeal the evaluation to the five-person formal evaluation committee on July 13, 2012 who could recommend reappointment of her to the president." (Compl., ¶ 58).

On June 29, 2012, plaintiff sent a letter to Icandela "claiming discrimination based on whistleblower and union activity and requesting protection." (Compl., ¶ 57).

On July 9, 2012, Calabria recommended that plaintiff not be reappointed. (Compl., ¶ 59).

According to plaintiff, Calabria's recommendation "was premature and could only be in retaliation for First Amendment, whistleblower and union activities, as he did not wait for a recommendation from the committee on the merit of Plaintiff's work." (Id.)

By letter dated July 27, 2012, Keen advised plaintiff that she would not be reappointed after August 5, 2013. (Compl., ¶ 60). According to plaintiff, Keen's "recommendation was premature could [sic] only be in retaliation for whistleblower, First Amendment and union activities, as [Keen] did not wait for a recommendation from the committee on the merit of Plaintiff's work." (Id.)

On July 29, 2012, Hall presented plaintiff "with a second evaluation marked 'unsatisfactory'." (Compl., ¶ 61). Plaintiff alleges that "[c]learly, [Hall] was pressured from his supervisor Patrick Calabria and President Hubert Keen to justify the non-reappointment, which was clearly a retaliatory decision[,] as [t]his was before the evaluation committee could make a fair recommendation to [Keen] to re-appoint [her]." (Id.)

Plaintiff alleges that after she "filed a grievance in regard to the presentation of an unsigned 'unsatisfactory' evaluation shortly after the signed satisfactory evaluation was received[,] [Incandela] agreed to remove that unsatisfactory evaluation from the file thereby conceding that [her] work was at all times satisfactory or better." (Compl., ¶ 62).

On September 4, 2012, plaintiff filed "an improper practice complaint" with the New York State Public Employment Relations Board ("PERB"). (Compl., ¶ 67).

On December 28, 2012, plaintiff filed an age discrimination complaint with the New York State Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC"). (Compl., ¶¶ 67-68).

10

According to plaintiff, her "contract with Defendants was to end August 6, 2013," (Compl., ¶ 64), but she was "pressured to resign by unwarranted negative evaluations in hope that [she] would leave and get another job," (Compl., ¶ 67). Specifically, plaintiff alleges that "[a]n offer was made for [her] to resign and as a reward receive a 'positive evaluation'." (Id.) Plaintiff also alleges that her employment at SUNY Farmingdale "was terminated on February 27, 2013 in advance of her August 5, 2013 contract date." (Id.)

Plaintiff alleges: (1) that a male under the age of forty (40) years was hired to replace her, (Compl., ¶ 65); (2) that "several workers over forty years old in [her] department have been asked if retiring would be more beneficial than staying on the job or have had this comment made clandestinely[;]" (3) that "[y]ounger employees," (a) "are given more challenging work assignments [than] older people * * *[,]" (b) "are given promotions and older ones are not" and (c) "are not formally evaluated and therefore are not given negative evaluations[;]" and (4) that after she turned fifty (50) years old, she (a) "received an uncharacteristic discipline shortly before termination[]" and (b) "was suddenly given a poor evaluation despite a prior stellar record." (Compl., ¶ 66).

## B.     Procedural Background

On June 25, 2013, plaintiff commenced this employment discrimination and retaliation action against defendants. On August 5, 2013, plaintiff filed an amended complaint against defendants alleging, *inter alia*, discrimination based upon age in violation of the ADEA and the NYHRL (first claim for relief), (Compl., ¶¶ 69-73); retaliation for exercising her First Amendment rights to free speech and freedom of association in violation of Section 1983

(second and fourth claims for relief, respectively), (Compl., ¶¶ 74-77); retaliation in violation of NYCSL § 75-b (third claim for relief), (Compl., ¶¶ 78-82); denial of her Fourteenth Amendment equal protection rights in violation of Section 1983 (fifth claim for relief), (Compl., ¶¶ 83-88); and violations of NYPOL §§ 74(3)(d) and (h) (sixth claim for relief), (Compl., ¶¶ 89-92). Plaintiff seeks, *inter alia*: (1) compensatory and punitive damages, (Compl., ¶¶ 94-98, 100(e) and (f)); (2) judgment declaring that defendants' acts violated her "rights as secured by federal and state law prohibiting retaliation in employment;" (3) an injunction (a) "[e]njoining Defendants from any further acts adversely affecting the terms and conditions of employment including compensation and privileges" and (b) requiring defendants to rescind, "declar[e] null and void" and remove from her personnel file "any letters of termination and the two formal evaluations[;]" (4) reinstatement of her employment with permanent appointment; and (5) attorney fees, interest, costs and disbursements. (Compl., ¶ 100).

Defendants now move to dismiss the amended complaint in its entirety pursuant to Rules 12(b)(1), (2), (5) and (6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process and failure to state a claim for relief.


II.    Discussion

    A.    Rule 12(b)(1)

        1.    Standard of Review

"Federal courts are courts of limited jurisdiction," Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America,

511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); see also Mims v. Arrow Financial Services, LLC, — U.S. —, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute * * *.") Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, — U.S. —, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); Henderson ex rel. Henderson v. Shinseki, — U.S. —, 131 S. Ct. 1197, 1202, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject-matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"[M]aterials extrinsic to the complaint" may be considered on a Rule 12(b)(1) motion. Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002); see also Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).

## 2. Eleventh Amendment Sovereign Immunity

Defendants contend that plaintiff's claims against SUNY Farmingdale and the individual defendants in their official capacity are barred by the principle of sovereign immunity under the Eleventh Amendment to the United States Constitution. Plaintiff contends, *inter alia*, that this Court has supplemental jurisdiction over her state law claims; that since "[a] State[,] via the actions of a State agency, may be liable under [Section 1983], if the alleged constitutional violation was caused by the entity's policies or customs[,] * * * in certain circumstances, it is not immune from suit in federal court[;]" and that this Court has subject matter jurisdiction over her ADEA claim insofar as she seeks injunctive relief.

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." Coleman v. Court of Appeals of Maryland, — U.S. —, 132 S. Ct. 1327, 1333, 182 L. Ed. 2d 296 (2012). Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State, one of its agencies or departments or a state official acting in his or her official capacity. See California v. Deep Sea Research, Inc., 523 U.S. 491, 502, 118 S. Ct. 1464, 140 L. Ed. 2d 626 (1998) ("[A] state official is immune from suit in federal court for actions taken in an official capacity * * *." (citation omitted)); Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (quotations and citation omitted)); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant

14

is proscribed by the Eleventh Amendment.") "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts." Sossamon v. Texas, — U.S.—, 131 S. Ct. 1651, 1657, 179 L. Ed. 2d 700 (2011); see also Pennhurst State, 465 U.S. at 98, 104 S. Ct. 900 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III * * *.")

The Second Circuit has held that "[f]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party." Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990) (second brackets in original; quotations and citation omitted); see also Gasparik v. Stony Brook University, 296 F. App'x 151, 152 (2d Cir. Oct. 16, 2008) (summary order) (affirming dismissal of Section 1983 claim against SUNY for lack of subject matter jurisdiction on the basis that "SUNY has not consented to be sued in a federal forum and so is immune from suit pursuant to the Eleventh Amendment."); Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Moreover, "[i]nsofar as [plaintiff] is suing the individual defendants in their official capacities, [s]he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY [Farmingdale]." Garcia, 280 F.3d at 107.


a.      ADEA and Section 1983 Claims

"As an exception to this principle [of Eleventh Amendment sovereign immunity], Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment[,]" Coleman, — U.S. —, 132 S. Ct. at 1333; see also United States v.

Georgia, 546 U.S. 151, 154, 158-59, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), so long as it "make[s] its intention to abrogate unmistakably clear in the language of the statute." Coleman, — U.S. —, 132 S. Ct. at 1333 (quotations, brackets and citation omitted); see also Sossamon, — U.S. —, 131 S. Ct. at 1661 ("[A] waiver of sovereign immunity must be expressly and unequivocally stated in the text of the relevant statute.") In Kimel v. Florida Board of Regents, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000), the Supreme Court held that "the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment[,]" id. at 91, 120 S. Ct. 631, and, thus, its "purported abrogation of the States' sovereign immunity * * * [was] invalid." Id. Accordingly, "the States' sovereign immunity in the area of age discrimination remains intact." Skalafuris v. City of New York, 444 F. App'x 466, 468 (2d Cir. Oct. 11, 2011) (summary order); see also McGinty v. New York, 251 F.3d 84, 92 (2d Cir. 2001) (holding that an aggrieved party "clearly cannot mount an ADEA claim against a state without its consent in federal court[.]") Moreover, "it is well settled that 42 U.S.C. § 1983 does not constitute an exercise of [Congress's] authority" to abrogate States' sovereign immunity pursuant to its powers under § 5 of the Fourteenth Amendment. Dube, 900 F.2d at 594; see also Quern v. Jordan, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that Section 1983 did not abrogate the States' Eleventh Amendment immunity).

In addition, "[a] sovereign's immunity may be waived, and * * * a State may consent to suit against it in federal court." Pennhurst State, 465 U.S. at 99, 104 S. Ct. 900. A State's consent to suit must be "unequivocally expressed," Pennhurst State, 465 U.S. at 99, 104 S. Ct. 900, and "may not be implied." Sossamon, — U.S.—, 131 S. Ct. at 1658. The "test for determining whether a state has waived its [sovereign] immunity from federal-court jurisdiction

16

is a stringent one." Id. (quotations and citation omitted). "Generally, [courts] will find a waiver either if the State voluntarily invokes [federal court] jurisdiction * * *, or else if the State makes a clear declaration that it intends to submit itself to [federal court] jurisdiction * * *." College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 675-76, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotations and citations omitted); see also In re Charter Oak Associates, 361 F.3d 760, 767 (2d Cir. 2004) (accord). There is no indication that defendants consented to suit or otherwise waived their sovereign immunity in this case.

Since neither the ADEA nor Section 1983 validly abrogated the State's sovereign immunity, and there is no indication that defendants consented to suit or otherwise waived their sovereign immunity in this case, the branch of defendants' motion seeking dismissal of plaintiff's ADEA and Section 1983 claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted to the extent: (1) that the ADEA claim (first claim for relief) and Section 1983 claims (second, fourth and fifth claims for relief) are dismissed in their entirety as against SUNY Farmingdale for lack of subject matter jurisdiction, see, e.g. Dube, 900 F.2d at 594-95 (holding that since SUNY had clearly not consented to suit in a federal forum, "no relief, either legal or equitable, was available against [it]"); and (2) so much of the ADEA claim (first claim for relief) and Section 1983 claims (second, fourth and fifth claims for relief) as seek compensatory and punitive damages against the individual defendants in their official capacity are dismissed in their entirety for lack of subject matter jurisdiction.[5]

_____

[5] Although plaintiff refers to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., in her amended complaint, (Compl., ¶ 1), she does not base any of her claims upon that statute. In any event, any such claim fails since plaintiff does not allege that defendants discriminated against her because of her gender or that she is a member of any other class protected by that statute. See Gasparik, 296 F. App'x at 152-53 ("Even if we were to read

17

i.      Claims for Injunctive and Declaratory Relief against the Individual Defendants in their Official Capacity

The Eleventh Amendment generally does not bar suits against state officials acting in their official capacity seeking prospective relief for alleged violations of federal law, i.e., to enjoin ongoing conduct that violates federal constitutional or statutory law, see Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908) (holding that the Eleventh Amendment does not preclude a federal court from granting prospective injunctive relief to prevent a state official from continuing to violate federal law); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004) ("To ensure the enforcement of federal law * * * the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."), although that exception to Eleventh Amendment immunity is inapplicable to claims seeking retrospective relief.  See Papasan v. Allaub, 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation."); Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 423 (1985) (5-4 decision) ("We have refused to extend the reasoning of Young * * * to claims for retrospective relief.")  The Young exception to

---

plaintiff's *pro se* pleadings as an effort to establish a claim for employment discrimination under Title VII * * *, dismissal would be appropriate, as plaintiff failed to allege that he is a member of a class protected by the Act.")

18

the principle of sovereign immunity under the Eleventh Amendment rests upon the premise "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes," Virginia Office for Protection and Advocacy v. Stewart, — U.S. —, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011), and "is limited to that precise situation * * *." Id. "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young [exception]." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); see also In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).[6]

In ascertaining whether a claim is barred by the Eleventh Amendment or permitted under Young, courts "look to the substance rather than to the form of the relief sought * * * and will be guided by the policies underlying the decision in Ex parte Young." Papasan, 478 U.S. at 278-79, 106 S. Ct. 2932 (citation omitted). "Whether a litigant's claim falls under the Ex parte Young exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Dairy Mart, 411 F.3d at 372 (quoting Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)) (alteration in original). "Thus, it is relevant– in considering the existence vel non of an ongoing violation– to ask whether the claimed remedy is still available." State Employees

---

[6] The two (2) exceptions to the Young exception to the principle of sovereign immunity under the Eleventh Amendment, i.e., the existence of "a comprehensive remedial scheme [devised by Congress] that prevents the federal courts from fashioning an appropriate equitable remedy" and the presence of "certain sovereignty interests * * * [such as] when the administration and ownership of state land is threatened," In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005), are not present in this case.

19

Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 96 (2d Cir. 2007).

"[C]laims for reinstatement to previous employment satisfy the Ex parte Young exception to the Eleventh Amendment's sovereign immunity bar." Rowland, 494 F.3d at 96; see also Dotson v. Griesa, 398 F.3d 156, 178 (2d Cir. 2005) ("A court order of reinstatement, whether of government benefits or employment, is not barred by sovereign immunity.") The equitable relief of reinstatement is "entirely forward-looking inasmuch as it would require the State prospectively to rehire plaintiff[] * * *, and to compensate [her] for work performed in the course of [her] future employment[,]" Rowland, 494 F.3d at 97-98 (emphasis omitted), and "if granted, would serve directly to end the alleged violation of federal law." Id. at 98 (quotations, brackets and citation omitted). Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's ADEA claim and Section 1983 claims seeking reinstatement of her employment by the individual defendants in their official capacity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

Plaintiff's other claims for injunctive relief, i.e., seeking an order "[e]njoining Defendants from any further acts adversely affecting the terms and conditions of employment including compensation and privileges" and requiring defendants to rescind, "declar[e] null and void" and remove "any letters of termination and the two formal evaluations" from her personnel file, are also sought "as a remedy for defendants' alleged ongoing [discrimination and retaliation] against [her] * * * [and] would prevent th[e] alleged ongoing injury from occurring again in the future." Rowland, 494 F.3d at 98. "Thus, sovereign immunity does not bar the other forms of injunctive relief sought by plaintiff[]." Id. Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's ADEA claim and Section 1983 claims seeking injunctive relief against the

individual defendants in their official capacity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

Plaintiff also seeks judgment declaring that defendants' conduct violated her "rights as secured by federal and state law prohibiting retaliation in employment." (Compl., ¶). Although such relief seeks a declaration pertaining to the past acts of the individual defendants in their official capacity, "[i]t does not impose upon [SUNY Farmingdale] 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials[]' * * * [and,] "[i]nsofar as the exposure of [SUNY Farmingdale] is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." Verizon Maryland, 535 U.S. at 646, 122 S. Ct. 1753 (quoting Edelman v. Jordan, 415 U.S. 651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)). Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's ADEA claim and Section 1983 claims seeking declaratory relief against the individual defendants in their official capacity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

b.    State Law Claims

The Young exception to the principle of sovereign immunity under the Eleventh Amendment is inapplicable to claims "against state officials on the basis of state law." Pennhurst State, 465 U.S. at 106, 104 S. Ct. 900. In Pennhurst State, the Supreme Court reasoned that:

> "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."

21

Id. Thus, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Id., 465 U.S. at 121, 104 S. Ct. 900. The principle that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment[] * * * applies as well to state-law claims brought into federal court under pendent jurisdiction." Id.; see also Almendral v. New York State Office of Mental Health, 743 F.2d 963, 968-69 (2d Cir. 1984) (accord). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's state law claims as against SUNY Farmingdale and the individual defendants in their official capacity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted and plaintiff's claims under the NYSHRL (first claim for relief), NYCSL § 75-b (third claim for relief) and NYPOL §§ 74(d) and (h) (sixth claim for relief) are dismissed in their entirety as against SUNY Farmingdale and the individual defendants in their official capacity as barred by the principle of sovereign immunity under the Eleventh Amendment.[7]

### B.    Rules 12(b)(2) and 12(b)(5)

#### 1.    Standard of Review

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant * * *. Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Grand River Enter. Six Nations, Ltd., v. Pryor, 425 F.3d

---

[7] In light of the dismissal of all claims against SUNY Farmingdale for lack of subject matter jurisdiction, the Court did not consider defendants' contention seeking dismissal of the claims against SUNY Farmingdale for lack of personal jurisdiction.

158, 165 (2d Cir. 2005) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010)).

"In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013); see also Chloé, 616 F.3d at 163. Where, as here, personal jurisdiction is challenged by way of a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court must "assume[] the truth of the plaintiff's factual allegations for purposes of the motion and challenge[] their sufficiency[,]" Dorchester Financial Securities, Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)), and avoid resolving any disputes "over the authenticity of [the plaintiff's] evidence[.]" Id. at 86. "If the defendant contests the plaintiff's allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence." Id. (quoting Ball, 902 F.2d at 197).[8] However, courts "will not draw argumentative inferences in the plaintiff's favor * * *, nor * * * accept as true a legal conclusion couched as a factual allegation[.]" Terrorist Attacks, 714 F.3d at 673 (quotations and citations omitted).

On a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, district courts may consider materials outside the pleadings "without converting [the] motion to

---

[8] No party has requested an evidentiary hearing in this case.

dismiss for lack of personal jurisdiction into a motion for summary judgment." <u>Dorchester</u>

<u>Financial</u>, 722 F.3d at 86. Likewise, to resolve a motion to dismiss pursuant to 12(b)(5) for

insufficiency of process, the court "must look to matters outside the complaint to determine what

steps, if any, the plaintiff took to effect service." <u>C3 Media & Marketing Group, LLC v.</u>

<u>Firstgate Internet, Inc.</u>, 419 F.Supp.2d 419, 427 (S.D.N.Y. 2005)(internal quotations and citation

omitted); <u>see also</u> <u>Koulkina v. City of New York</u>, 559 F.Supp.2d 300, 311 (S.D.N.Y. 2008). In

opposing a motion to dismiss pursuant to Rule 12(b)(5), the plaintiff bears the burden of

establishing that service was adequate. <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 753 (2d Cir.

2010) (quoting <u>Burda Media, Inc. v. Viertel</u>, 417 F.3d 292, 298 (2d Cir. 2005)).


      2.    Personal Jurisdiction and Service of Process

Defendants contend, *inter alia*, that this Court lacks personal jurisdiction over the

individual defendants because they were not properly served with process in accordance with

subsection (2) of Section 308 of the New York Civil Practice Law and Rules ("NYCPLR") since

the summonses and complaint were not served at SUNY Farmingdale's "actual place of

business," N.Y. C.P.L.R. §§ 308(2) and (6), and none of the individual defendants received a

copy of the complaint by mail. Plaintiff contends, in essence, that defendants were properly

served with process pursuant to Rule 4(e)(2)(C) of the Federal Rules of Civil Procedure.

Rule 4(e) of the Federal Rules of Civil Procedure provides that:

> "[u]nless federal law provides otherwise, an individual–other than
> a minor, an incompetent person, or a person whose waiver has
> been filed–may be served in a judicial district of the United States
> by: (1) following state law for serving a summons in an action
> brought in courts of general jurisdiction in the state where the

24

district court is located or where service is made; or (2) doing any
of the following: (A) delivering a copy of the summons and of the
complaint to the individual personally; (B) leaving a copy of each
at the individual's dwelling or usual place of abode with someone
of suitable age and discretion who resides there; or (C) delivering a
copy of each to an agent authorized by appointment or by law to
receive service of process."

The affidavits of service completed by plaintiff's process server indicate, *inter alia*, that

each of the individual defendants was served: (1) by delivering "a true copy" of the summons and

complaint "to Caroline Conway (co-worker) a person of suitable age and discretion" at "2350

Broadhollow Road Horton Hall, Legal Affairs Rm 145, Farmingdale, NY 11735," alleged to be

the individual defendants' "actual place of business/employment" on July 1, 2013; and (2) "by

mailing a true copy of [the summons and complaint] to the above address in a 1st Class postpaid

properly addressed envelope marked 'Personal and Confidential' in an official depository under

the exclusive care and custody of the United States Post Office in the State of New York" on July

2, 2013. (Doc. No. 5). Thus, contrary to plaintiff's contention, only Rule 4(e)(1) of the Federal

Rules of Civil Procedure is applicable.

Section 308(2) of the N.Y. C.P.L.R. provides, in relevant part, that:

"[p]ersonal service upon a natural person shall be made * * * by
delivering the summons within the state to a person of suitable age
and discretion at the actual place of business * * * of the person to
be served and by * * * mailing the summons by first class mail to
the person to be served at his or her actual place of business in an
envelope bearing the legend 'personal and confidential' and not
indicating on the outside thereof, by return address or otherwise,
that the communication is from an attorney or concerns an action
against the person to be served, such delivery and mailing to be
effected within twenty days of each other * * *."

Section 308(6) of the N.Y. C.P.L.R. defines "actual place of business" to "include any

location that the defendant, through regular solicitation or advertisement, has held out as its place of business." "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." Warshun v. New York Community Bancorp., Inc., 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013) (quoting Velez v. Vassallo, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002)); see also TAGC Management, LLC v. Lehman, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (accord); Rosario v. NES Medical Services of New York, P.C., 105 A.D.3d 831, 833, 963 N.Y.S.2d 295 (2d Dept. 2013)("A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location[.]" (quotations and citation omitted)). A defendant's "actual place of business" is his or her "business address at the time of service, and not when the cause of action arose." Jackson v. County of Nassau, 339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004). "For the purpose of service of process, a defendant can have more than one 'actual place of business.'" Warshun, 957 F. Supp. 2d at 266; see also TAGC Management, 842 F. Supp. 2d at 582 (accord).

"CPLR 308(2) requires strict compliance and the plaintiff has the burden of proving, by a preponderance of the credible evidence, that service was properly made." Rosario, 105 A.D.3d at 833, 963 N.Y.S.2d 295 (quotations and citation omitted); see also Gray-Joseph v. Shuhai Liu, 90 A.D.3d 988, 989, 934 N.Y.S.2d 868 (2d Dept. 2011) ("Jurisdiction is not acquired pursuant to CPLR 308(2) unless both the delivery and mailing requirements have been strictly complied with[.]")

Defendants' unsupported contention that since SUNY Farmingdale "is a college within

26

the [SUNY] system, * * * its place of business is State University Plaza, 353 Broadway, Albany, New York[,]" (Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ["Def. Mem."], at 9 n. 5), is without merit. There is no indication that any of the individual defendants were ever present at that Albany address, much less with any regularity, nor that any of the individual defendants regularly transacted business at the Albany location.

The affidavits of service of plaintiff's process server constitute prima facie evidence that copies of the summons and complaint were properly delivered to all defendants by leaving them with a person or suitable age and discretion[9] at their actual place of business, i.e., "the location where they were physically present with regularity, and where they regularly transacted business," Rosario, 105 A.D.3d at 833, 963 N.Y.S.2d 295, and mailing them to that same address within twenty (20) days thereafter, in accordance with N.Y. C.P.L.R. § 308(2). See Old Republic Ins. Co. v. Pacific Financial Services of America, Inc., 301 F.3d 54, 57 (2d Cir. 2002) ("In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service * * *."); De Curtis v. Ferrandina, 529 F. App'x 85, 86 (2d Cir. July 16, 2013) (summary order) ("A process server's sworn statement of service creates a presumption that service has been effectuated.") At the pleadings stage of the proceeding, where no party has requested an evidentiary hearing, that is sufficient to defeat a motion to dismiss for lack of personal jurisdiction or insufficient service of process. See, e.g. Dorchester Financial, 722 F.3d at 86 (holding that the district court did not err "in failing to hold an evidentiary hearing, as there is no indication that either party requested one" and that where a district court chooses not to

---

[9] Defendants concede that Caroline Conway, the individual to whom copies of the summonses and complaint were delivered at SUNY Farmingdale, is a person of suitable age and discretion. (Def. Mem. at 9).

conduct "a full-blown evidentiary hearing," it can only evaluate whether the plaintiff has "through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction notwithstanding any controverting presentations by [the defendant]." (quotations and citation omitted)). The individual defendants' denials of receipt of the mailed copies of the summonses and complaint merely raise an issue of fact that cannot be resolved on a motion pursuant to Rules 12(b)(2) or (5) of the Federal Rules of Civil Procedure absent an evidentiary hearing, which has not been requested. See, e.g. id. ("[I]n the absence of an evidentiary hearing, it was error for the district court to resolve [a] factual dispute in [the defendant's] favor.") Accordingly, the branches of defendants' motion seeking dismissal of the complaint pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and insufficient service of process are denied.

C.    Rule 12(b)(6)

1.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937.

28

The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013); Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond

what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013). Although plaintiff did not attach Hall's evaluations to her amended complaint, she relies heavily upon those evaluations in support of her claims of retaliation and, thus, they are properly considered on this motion as being "integral" to the complaint. "Plaintiff['s] failure to include matters of which as pleader[] [she] had notice and which were integral to [her] claim[s]– and that [she] apparently most wanted to avoid– may not serve as a means of forestalling * * * decision on a 12(b)(6) motion." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quotations, brackets and citation omitted); see also Holowecki v. Federal Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2006), aff'd, 552 U.S. 389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is

30

integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (quotations, brackets and citation omitted)).

Furthermore, "[i]n adjudicating [a Rule 12(b)(6)] motion, [courts] may take judicial notice of documents in the public record, which includes records and reports of administrative bodies, _i.e._, the NYSDHR." Volpe v. Nassau County, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013); see also Morris v. David Lerner Associates, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to the plaintiff's claims.") Thus, the Court takes judicial notice of the decision of the NYSDHR on plaintiff's discrimination complaint to establish the fact of such litigation and its outcome; not for the truth of the matters asserted therein. See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

### 2.     ADEA Claim against the Individual Defendants

Since only "[e]mployers, not individuals, are liable under Title VII," Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012), and the ADEA, see Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. Apr. 28, 2011) (summary order) (holding that neither Title VII nor the ADEA "subjects individuals, even those with supervisory liability over the plaintiff, to personal liability"); Rozenfeld v. Department of Design & Construction of City of New York, 875 F. Supp. 2d 189, 201 (E.D.N.Y. 2012), aff'd, 522 F. App'x 46 (2d Cir. May 29, 2013) (holding that the ADEA does not provide for individual liability), the branch of defendants' motion seeking dismissal of

31

plaintiff's ADEA and Title VII claims against the individual defendants in their individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and the ADEA claim (first claim for relief) and any Title VII claim against the individual defendants in their individual capacity are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

      3.     Section 1983 Claims against the Individual Defendants

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

      a.     Statute of Limitations

Defendants contend that all of plaintiff's claims alleging wrongdoing that occurred prior to June 25, 2010 are time-barred. Plaintiff alleges, *inter alia*, that her "union activity and whistleblowing had a continuing effect in regard to how she was treated throughout her career at

Farmingdale College which ultimately led to and culminated in her termination" and that "the statute of limitations started in September 2007 when [she] was first warned [by Edelman] about going to a union meeting, and was tolled until her termination, due to ongoing serious harassing events at the hands of the Defendants throughout her employment." (Plf. Mem. at 11).[10]

"Section 1983 actions filed in New York are * * * subject to a three-year statute of limitations." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013); see also Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)). Thus, discrimination and retaliation claims brought in New York under Section 1983 accrue "when the plaintiff knew or should have known of the disparate treatment [or retaliation]." Fahs Construction Group, Inc. v. Gray, 725 F.3d 289, 292 (2d Cir. 2013), cert. denied, 134 S. Ct. 831, 187 L. Ed. 2d 687 (2013); see also Washington v. County of Rockland, 373 F.3d 310, 319 (2d Cir. 2004) ("As with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action.")

"Where a plaintiff challenges a 'continuous practice and policy of discrimination, however, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Fahs Construction, 725 F.3d at 292 (quoting Cornwell v.

---

[10] Plaintiff's contentions that "[s]he offers * * * direct evidence of past retaliation that is consistent with and corroborates future retaliation," (Plf. Mem. at 15), and that "it can be argued the College calculated that they [sic] would let enough time pass to run the Statute of Limitations out and seize the yoga police incident and subsequent disciplinary actions as the first opportunity to retaliate," (id.), are entirely conclusory and/or speculative and, thus, do not warrant further consideration.

Robinson, 23 F.3d 694, 703 (2d Cir. 1994)); see also Shomo, 579 F.3d at 181 (accord). "To trigger such a delay, the plaintiff 'must allege both [1] the existence of an ongoing policy of discrimination and [2] some non-time-barred acts taken in furtherance of that policy.'" Fahs Construction, 725 F.3d at 292 (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999); see also Shomo, 579 F.3d at 181 (accord). Discrete acts of discrimination or retaliation, such as "termination, failure to promote, denial of transfer[,] refusal to hire," National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), or a negative evaluation, see Valtchev v. City of New York, 400 F. App'x 586, 589 (2d Cir. Nov. 15, 2010) (summary order), are "separate actionable unlawful employment practice[s], such that the applicable statute of limitations begins to run from the date of the adverse [employment] decision," Rodriguez v. County of Nassau, 547 F. App'x 79, 80-81 (2d Cir. Dec. 16, 2013) (summary order) (quotations, brackets and citation omitted), and do not constitute a continuing violation. See Smith v. New York City Department of Education, 524 F. App'x 730, 732 (2d Cir. May 2, 2013) ("[R]eliance on the continuing violation doctrine * * * is misplaced [where] each of the allegedly retaliatory events [is] a discrete action, not an 'ongoing policy' of retaliation."); Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993), abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.")

All of the acts of which plaintiff complains on the part of Edelman occurred between August 2007 and January 2009, while plaintiff worked in SUNY Farmingdale's Support Services for Disabilities Department under Edelman's supervision. (Compl., ¶¶ 27-38). Plaintiff alleges

34

no discriminatory or retaliatory acts by Edelman following her transfer to SUNY Farmingdale's Admissions Department in January 2009. (Compl., ¶ 39). Since this action was not commenced until June 25, 2013, more than four (4) years later, all of plaintiff's Section 1983 claims against Edelman are time-barred. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as time-barred is granted to the extent that plaintiff's Section 1983 claims against Edelman are dismissed in their entirety with prejudice as time-barred.

Similarly, plaintiff's claims: (1) that Incandela did nothing about her complaint about Edelman in 2007, (Compl., ¶ 29); (2) that her caseload was doubled, but her request for a salary increase was denied in 2008, (Compl., ¶ 30); (3) that Keen did nothing about the letter that she sent him in 2008 complaining about a purported misappropriation of VESID money, (Compl., ¶ 33); (4) that LaRosa "minimized the misappropriation," (Compl., ¶ 34), and denied her request for an investigation into "the legitimacy and ethics" of applying for a "Perkins III (VTEA) grant," (Compl., ¶ 35), in 2008; and (5) that Cepriano did nothing about her January 2009 letter, *inter alia*, complaining about Edelman, (Compl., ¶ 39), are all discrete acts that do not constitute a continuing violation, particularly since plaintiff does not complain about any acts by defendants for more than two (2) years thereafter, i.e., between January 2009 and May 2011. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as time-barred is granted to the extent that plaintiff's Section 1983 claims (second, fourth and fifth claims for relief) based upon any acts occurring prior to June 25, 2010 are dismissed in their entirety with prejudice as time-barred.

35

b.    Claims against Fischer and LaRosa

A Section 1983 claim must allege the personal involvement of any individual defendant

in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010)

(quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Grullon, 720 F.3d at 138-

39; Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011). "Personal involvement"

may be established by evidence of direct participation in the challenged conduct, or by evidence

of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's

unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross

negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference

to the rights of others by failing to act on information regarding the unlawful conduct of

subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also

Grullon, 720 F.3d at 139; Back v. Hastings on Hudson Union Free School District, 365 F.3d 107,

127 (2d Cir. 2004). "The fact that [a defendant] was in a high position of authority is an

insufficient basis for the imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885

F.2d 1060, 1065 (2d Cir. 1989); see also Back, 365 F.3d at 127. A complaint based upon a

violation under Section 1983 that does not allege facts establishing the personal involvement of

an individual defendant fails as a matter of law. See Costello, 632 F.3d at 48-9.

Plaintiff has not alleged the direct participation of Fischer or LaRosa in any of the acts of

which she complains that occurred on or after June 25, 2010, nor any basis upon which to find

those defendants liable in a supervisory capacity. Plaintiff alleges only that Fischer was the

supervisor of the two (2) police officers involved in the yoga class incident; that LaRosa was

Fischer's supervisor; and that, "upon information and belief," Keen and LaRosa devised a plan to

36

terminate her employment because Fischer had been embarrassed by the yoga class incident. (Compl., ¶¶ 41-42). Since the latter allegation is wholly conclusory, it is "not entitled to the assumption of truth." Iqbal 556 U.S. 662, 129 S.Ct. at 1949 (holding that bare assertions, *inter alia*, that defendants "knew of" or "agreed to" act in violation of the plaintiff's constitutional rights "solely" for an impermissible purpose were "conclusory and not entitled to be assumed true.") Since the only remaining factual allegations about Fischer and LaRosa in the amended complaint that are not time-barred are that Fischer supervised the two (2) officers involved in the yoga class incident and that LaRosa supervised Fischer, the amended complaint fails to allege any facts from which it may reasonably be inferred that Fischer or LaRosa deprived plaintiff of any federal or constitutional right. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against Fischer and LaRosa pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 claims against Fischer and LaRosa are dismissed in their entirety with prejudice for failure to state a claim for relief.

    c.    First Amendment Retaliation Claims

    Plaintiff alleges that defendants retaliated against her because she exercised her First Amendment rights to free speech and freedom of association in violation of Section 1983 (second and fourth claims for relief, respectively).

    Generally, "[t]o plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him

some injury." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013); see also Cox v. Warwick Valley Central School District, 654 F.3d 267, 272 (2d Cir. 2011) ("To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.")

"[T]he First Amendment protects a public employee from retaliation by his or her employer for the employee's speech only if the employee speaks [1] as a citizen [2] on a matter of public concern." Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013) (quotations and citation omitted); see also Wrobel v. County of Erie, 692 F.3d 22, 28 (2d Cir. 2012) ("Only if [the] employee's speech or associational conduct touches on a matter of public concern can a First Amendment claim proceed." (quotations and citation omitted)); Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) ("To determine whether or not a plaintiff's speech is protected [by the First Amendment], a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" (quoting Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006))). Similarly, "a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004); see also Singer, 711 F.3d at 341 (accord); Piscottano v. Murphy, 511 F.3d 247, 273 (2d Cir. 2007) ("[A] government employee must show, *inter alia*, that his expressive association involved a matter of public concern.") Thus, "[t]o prevail on a Section 1983 free speech [or freedom of association] claim, a public employee must demonstrate (1) his speech [or associational conduct] addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection

between the speech [or associational conduct] and the adverse employment action[,]" Wrobel, 692 F.3d at 30, "so that it can be said that the speech [or associational conduct] was a motivating factor in the determination." Washington, 373 F.3d at 320. Since defendants contend only that the amended complaint fails to allege any facts in support of the third element of causation, it is assumed, for purposes of this motion only, that the amended complaint sufficiently pleads the first two (2) elements of a First Amendment retaliation claim.

"A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Cobb, 363 F.3d at 108. To satisfy the causal connection requirement of the prima facie case, the plaintiff "may not rely on conclusory assertions of retaliatory motive." Washington, 373 F.3d at 321 (quotations and citation omitted); see also Cobb, 363 F.3d at 108 ("[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link.") Nonetheless, since "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint[,] * * * [i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Dougherty v. Town of North Hempstead Board of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009); see also Summa v. Hofstra University, 708 F.3d 115, 127-28 (2d Cir. 2013) (accord); Wrobel, 692 F.3d at 32 ("A causal relationship can be demonstrated either indirectly by means of circumstantial evidence, including that the protected speech was followed by adverse

treatment, or by direct evidence of animus.") The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001); see also Espinal, 558 F.3d at 129 (accord). In Espinal, the Second Circuit found "that the passage of only six months between the dismissal of [the plaintiff's] lawsuit and an allegedly retaliatory beating by officers, one of whom * * * was a defendant in the prior lawsuit, [was] sufficient to support an inference of a causal connection[,]" 558 F.3d at 129, and in Summa, the Second Circuit found that "[t]he seven-month gap between [the plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges [was] not prohibitively remote." Summa, 708 F.3d at 128. On the other hand, in Garcia, 280 F.3d at 107, the Second Circuit found that the plaintiff failed to demonstrate a causal connection because, *inter alia*, there was a thirteen (13)-month gap between the plaintiff's protected speech and his dismissal.

i.      Freedom of Speech Claim (Second Claim for Relief)

In her second claim for relief, plaintiff alleges, *inter alia*, that during the yoga class incident "on May 18, 2011, she spoke up on behalf of a coworker being hassled by campus security, and was almost immediately subject to retaliation by college administration by not being recommended for reappointment within a month after speaking out on behalf of the coworker." (Compl., ¶ 76). Plaintiff further alleges that defendants retaliated against her for her speech on behalf of her co-worker during the yoga class incident by, *inter alia*, issuing "a non-

40

reappointment notice" and "subsequent negative evaluations to justify the retaliatory

termination;" terminating her employment; and subjecting her to a hostile work environment by

harassing her, failing to promote her, failing to award her bonuses and "humiliating her,

intimidating [her], exposing her to biased treatment, [and] libeling her * * *." (Id.)[11]

Plaintiff's allegations, *inter alia*, "[u]pon information and belief," (1) that "the

administration wanted to terminate [her] based on whistleblower and union activity but could not

as she had no formal negative evaluations at the time her contract notice expired[,]" (Compl.,

50), and (2) that Hall issued her negative evaluations because "[his] supervisors wanted him to

come up with reasons to fire [her]," (Compl., ¶ 51), and "he was pressured by his supervisors to

do [so][,]" (Compl., ¶ 56), are wholly conclusory and "not entitled to the assumption of truth."

Iqbal 556 U.S. 662, 129 S.Ct. at 1949. Likewise, plaintiff's allegations, *inter alia*,: (1) that

Calabria's and Keen's recommendations on July 9, 2012 and July 27, 2012, respectively, that she

not be reappointed were "premature and could only be in retaliation for First Amendment,

whistleblower and union activities, as [they] did not wait for a recommendation from the

committee on the merit of Plaintiff's work," (Compl., ¶¶ 59-60); and (2) that Hall issued an

unsatisfactory evaluation on July 29, 2012 because he "was pressured from * * * Calabria and *

* * Keen to justify the non-reappointment, which was clearly a retaliatory decision[,] as [t]his

was before the evaluation committee could make a fair recommendation to [Keen] to re-appoint

[her]," (Compl., ¶ 61), are conclusory and "not entitled to the assumption of truth." Iqbal 556

U.S. 662, 129 S.Ct. at 1949.

---

[11] Plaintiff also alleges that defendants retaliated against her by threatening to falsely arrest her. (Compl., ¶ 76). However, the complaint is devoid of any factual allegations indicating that any of the named defendants personally threatened to have her arrested.

However, the non-conclusory factual allegations in the amended complaint, assumed to be true for purposes of this motion, indicate, *inter alia*: (1) that a little more than one (1) month after the yoga class incident, Icandela "interrogat[ed]" plaintiff and issued her a counseling memorandum relating to the yoga class incident, (Compl., ¶ 43); and (2) that approximately two (2) to three (3) months after the yoga class incident (a) Hall issued plaintiff a satisfactory evaluation and recommended that she be reappointed and that her contract be renewed, (Compl., ¶¶ 47), but also counseled her about her union activities, (Compl., ¶ 49); (b) Cepriano nonetheless recommended that plaintiff not be reappointed, (Compl., ¶ 45); and (c) Keen sent a letter to plaintiff indicating that her contract would not be renewed, (Compl., ¶ 48). With the exception of Hall's issuance of the satisfactory evaluation, which is not an adverse employment action, those non-conclusory factual allegations are sufficient at the pleadings stage to demonstrate a causal connection between plaintiff's statements on behalf of her co-worker during the yoga class incident and the aforementioned alleged conduct by Icandela, Cepriano, Hall and Keen.

Despite Cepriano's recommendation and Keen's letter, plaintiff was ultimately reappointed for another year. (Compl., ¶ 50). Although plaintiff alleges, *inter alia*, that at some time during the following academic year, Hall took a project away from her and gave it to another counselor, (Compl., ¶ 54); someone criticized her for being away from the office to attend professional development conferences, (Compl., ¶ 55); and she was denied a salary increase, promotion and "a bonus called discretionary income, despite the fact * * * that all other counselors in the department received [such bonus]," (Compl., ¶ 63), the amended complaint is devoid of any factual allegations from which a causal connection between plaintiff's statements

42

during the yoga class incident in May 2011 and those acts, occurring anywhere between four (4) months to thirteen (13) months after the yoga class incident, may reasonably be inferred, particularly in light of Hall's issuance of a satisfactory evaluation and recommendation that plaintiff be reappointed and her contract be renewed in the interim.

Likewise, the amended complaint is devoid of any factual allegations from which a causal connection may be reasonably be inferred between plaintiff's statements during the yoga class incident and (a) Hall's "minimally satisfactory" evaluation on June 27, 2012, and purported recommendation against plaintiff's reappointment, (Compl., ¶ 56), more than thirteen (13) months after the yoga class incident; and (b) Keen's indication to plaintiff that she would not be reappointed, (Compl., ¶ 60), and Hall's issuance of "a second evaluation marked 'unsatisfactory[,]'" (Compl., ¶ 61), approximately fourteen (14) months after the yoga class incident.

Again, plaintiff was ultimately reappointed for the 2012-2013 academic year, (Compl., ¶ 64), notwithstanding the purported recommendations otherwise, and plaintiff alleges no retaliatory conduct on the part of any defendant occurring between August 2012 and February 27, 2013, when her employment at SUNY Farmingdale was allegedly terminated. (Compl., ¶ 67). Thus, the amended complaint is devoid of any factual allegations from which a causal connection between plaintiff's statements during the yoga class incident and the termination of her employment, more than twenty-one (21) months after the yoga class incident, may reasonably be inferred. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 First Amendment retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's Section 1983 claim against Icandela, Hall,

43

Cepriano and Keen in their individual capacity, alleging retaliation for exercising her First Amendment free speech rights (second claim for relief), is dismissed with prejudice for failure to state a claim for relief, with the exception of plaintiff's claims that Icandela "interrogat[ed]" her and issued her a counseling memorandum on June 14, 2011; that Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her about her union activities on July 25, 2011; and that Keen sent a letter to her indicating that her contract would not be renewed in August 2011.[12]

Moreover, plaintiff has not alleged the direct participation of Calabria in any of the acts of which she complains occurring within one (1) year of the yoga class incident, nor any basis upon which to find Calabria liable in a supervisory capacity for any violation of her First Amendment free speech rights. Plaintiff alleges only that almost fourteen (14) months after the yoga class incident, Calabria recommended that she not be reappointed. (Compl., ¶ 59). That allegation is insufficient to demonstrate a causal connection between plaintiff's statements during the yoga class incident and Calabria's recommendation. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 First Amendment retaliation claims pursuant to

---

[12] In light of this determination, plaintiff's Section 1983 claim seeking injunctive and declaratory relief from Icandela, Cepriano, Hall and Keen in their official capacity for their alleged retaliation of plaintiff for exercising her First Amendment free speech rights fails to state a claim for relief since the remaining claims do not pertain to plaintiff's termination or the evaluations issued by Hall. Thus, there is no basis for granting the injunctive relief sought by plaintiff on this Section 1983 claim, i.e., reinstatement of her employment, the removal of any letters of termination and the evaluations from her personnel file, and "any further acts adversely affecting the terms and conditions of [her] employment." (Compl., ¶ 100). Accordingly, and for the reasons set forth elsewhere in this order, plaintiff's Section 1983 claims against the individual defendants in their official capacity seeking injunctive and declaratory relief, including reinstatement, are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's Section 1983 claim against Calabria alleging retaliation for exercising her First Amendment free speech rights (second claim for relief) is dismissed in its entirety with prejudice for failure to state a claim for relief.

    ii.    Freedom of Association Claim (Fourth Claim for Relief)

In her fourth claim for relief, plaintiff alleges, *inter alia*, that "Defendants violated [her] First Amendment rights of association and participation in a union by * * * subjecting [her] to, inter alia, a retaliatory hostile work environment, coercing her to withdraw from her union delegate and state committee appointments, placing unwarranted negative evaluations in her file, failing to promote her, threatening her with false arrest, failing to award her bonuses, issuing undeserved negative evaluations, humiliating her, intimidating her, exposing her to biased treatment, libeling her and ultimately ending her employment." (Compl., ¶ 84).

Assuming, without deciding, that membership in a union, alone, touches on a matter of public concern, see Cobb, 363 F.3d at 107 (declining to decide the issue "whether [union] membership, by itself, touches on a matter of public concern")[13], the amended complaint fails to plead sufficient facts from which the element of causation may reasonably be inferred.

Plaintiff had become a member of the union no later than September 2007, within one (1) month of commencing her employment at SUNY Farmingdale. (Compl., ¶¶ 26-27). Although

---

[13] Although "retaliation solely for union activity clearly raises a public concern," Clue v. Johnson, 179 F.3d 57, 61 (2d Cir. 1999), the only potential union activity for which plaintiff alleges that she was retaliated is her statements during the yoga class incident, which is the basis for her second claim for relief. This fourth claim for relief is based solely upon plaintiff's "participation in a union." (Compl., ¶ 84).

she alleges certain hostility by Edelman from the beginning of her employment until she was transferred to SUNY Farmingdale's Admissions Department, under the supervision of Hall, in January 2009, (Compl., ¶¶ 27-39), there are no allegations about any retaliatory conduct by anyone from January 2009 until the yoga class incident in May 2011. Thus, plaintiff was a member of, and participated in, the union for approximately three (3) years and eight (8) months before she experienced any purported retaliation because of that association by any of the defendants except Edelman, whose allegedly retaliatory conduct ended no later than January 2009 and is, thus, time-barred. Therefore, it is "highly implausible" that plaintiff's association with the union was a motivating factor in any of the challenged employment decisions by the individual defendants occurring on or after June 25, 2010. See, e.g. Cobb, 363 F.3d at 109 (vacating the judgment in favor of the plaintiff and remanding to the district court with directions to dismiss, *inter alia*, the plaintiffs' First Amendment retaliation claim on the basis that it was "'highly implausible' that the plaintiffs' association with [a union] was a motivating factor in the decision to initiate disciplinary action" because the plaintiffs "had been corrections officers for over ten years, and there [was] no claim that they only recently joined [the union].") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 First Amendment retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's Section 1983 claim alleging retaliation in violation of her First Amendment right to freedom of association (fourth claim for relief) is dismissed in its entirety with prejudice for failure to state a claim for relief.

d.      Equal Protection Claim

In her fifth claim for relief, plaintiff alleges, *inter alia*, that defendants "violated [her] First Amendment [sic] rights by submitting her to disparate, biased and discriminatory disciplinary and evaluation procedures[] * * * [and] retaliated against her for exercising her fourteenth amendment [sic] equal protections [sic] rights by intentionally retaliating against her and subjecting [her] to a retaliatory hostile work environment * * *." (Compl., ¶ 87). Presumably, plaintiff is attempting to claim that defendants violated her Fourteenth Amendment Equal Protection rights by treating her differently in retaliation for her exercising her First Amendment rights to free speech and freedom of association.

The Supreme Court has held that "the class-of-one theory of equal protection has no application in the public employment context." Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 607, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008). Accordingly, in the public employment context, "the Equal Protection Clause is implicated [only] when the government makes class-based decisions * * *, treating distinct groups of individuals categorically differently." Id. Since plaintiff has not alleged that defendants treated her differently due to her membership in a protected class[14], she cannot state a viable Equal Protection claim as a matter of law.

To the extent that plaintiff's claim can be read to allege that she was treated differently due to her membership in the union, even assuming, *arguendo*, that union membership constitutes a protected class, that claim fails for the same reason that plaintiff's First Amendment freedom of association claim fails. See, e.g. Cobb, 363 F.3d at 110 ("Our holding on the First

---

[14] Although the complaint alleges that defendants discriminated against plaintiff because of her age, the Supreme Court has held that "age is not a suspect classification under the Equal Protection clause." Kimel, 528 U.S. at 83, 120 S. Ct. 631.

· Amendment retaliation claim that the evidence in this case was insufficient, as a matter of law, to

show that the defendants disciplined the plaintiffs based on their membership in [a union]

requires that we direct entry of judgment for the defendants on the plaintiffs' selective

prosecution [Equal Protection] claim as well.") Accordingly, plaintiff's Section 1983 Equal

Protection claim (fifth claim for relief) is *sua sponte* dismissed in its entirety with prejudice

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for

relief.


### 4. State Law Claims against the Individual Defendants

Since plaintiff's ADEA claim against the individual defendants in their official capacity

for injunctive and declaratory relief, and certain of her Section 1983 claims against Icandela,

Cepriano, Hall and Keen alleging retaliation because she exercised her First Amendment free

speech rights, have not been dismissed, the branch of defendants' motion seeking dismissal of

plaintiff's pendent state law claims against the individual defendants in their individual capacity

is denied. Defendants contend, in the alternative, *inter alia*, that plaintiff's state law claims

should be dismissed: (a) pursuant to New York Executive Law ("NYHRL") § 297(9) and (b)

because there is no individual liability under the NYCSL or NYPOL.


#### a. NYHRL Claim

Section 297(9) of the NYHRL provides, in pertinent part:

> "Any person claiming to be aggrieved by an unlawful
> discriminatory practice shall have a cause of action in any court of

appropriate jurisdiction for damages * * *, and such other remedies as may be appropriate, * * * unless such person had filed a complaint hereunder [i.e., with the State Division of Human Rights ("NYSDHR")] or with any local commission on human rights, * * *, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division. * * * A complaint filed by the equal employment opportunity commission to comply with the requirements of * * * 29 USC 633(b) shall not constitute the filing of a complaint within the meaning of this subdivision."

With certain exceptions not relevant here, NYHRL § 297(9) "precludes resort to courts after claims have been filed with a local commission on human rights." Desardouin v. City of Rochester, 708 F.3d 102, 106 (2d Cir. 2013); see also York v. Association of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002) ("[T]he NYHRL * * * claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court.") "[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 884 (2d Cir. 1995); see also York, 286 F.3d at 127 ("[T]here is no question that the election-of-remedies provision[] * * * appl[ies] to federal courts as well as state.")

The complaint alleges that plaintiff filed an age discrimination complaint with the NYSDHR on December 28, 2012. (Compl., ¶ 67). The Court takes judicial notice of the fact that plaintiff's administrative complaint was dismissed on the merits by order dated June 28, 2013. Thus, "§297(9) poses an insuperable jurisdictional bar to the advancement of [plaintiff's] [NYHRL] claim[] in this litigation." Moodie, 58 F.3d at 884. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYHRL claims is granted and plaintiff's

NYHRL claims (first claim for relief) are dismissed in their entirety pursuant to NYHRL §297(9) for lack of subject matter jurisdiction.

### b. NYCSL § 75-b Claim

Defendants contend that NYCSL § 75-b claims cannot be brought against individual employees in their individual capacity. Plaintiff does not address this claim.

"Section 75-b bars retaliatory action by public employers against employees for disclosing information to a governmental body." Kirwin v. New York State Office of Mental Health, 665 F. Supp. 1034, 1039 (E.D.N.Y. 1987); see N.Y. Civ. Serv. Law §§ 75-b(1)(a) and (2)(a). Since "[p]ublic employees in their individual capacities do not belong to the class of defendant defined by [NYCSL § 75-b][,]" Kirwin, 665 F. Supp. at 1039, "a public employee in his individual capacity may not be sued under § 75-b." Id.; see also Wallikas v. Harder, 67 F. Supp. 2d 82, 86 (N.D.N.Y. 1999) ("Plaintiffs' claims under section 75-b against [the individual defendants] in their individual capacities cannot be maintained."); Fry v. McCall, 945 F. Supp. 655, 666 (S.D.N.Y. 1996) ("[C]laims against officials in their individual capacities cannot be maintained under section 75-b * * *."); Moore v. County of Rockland, 192 A.D.2d 1021, 1024, 596 N.Y.S.2d 908 (3rd Dept. 1993) ("Civil Service Law § 75-b applies only to retaliatory discharges by public employers, not to actions by fellow public employees * * *.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYCSL § 75-b claim against the individual defendants in their individual capacity is granted and plaintiff's NYCSL § 75-b claim (third claim for relief) is dismissed in its entirety with prejudice as against the individual defendants in their individual capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure for failure to state a claim for relief.

c.      NYPOL § 74(3) Claim

In her sixth claim for relief, plaintiff alleges that defendants violated NYPOL Sections

74(3)(d) and (h) by "us[ing] their official positions to secure unwarranted privileges or

exemptions for himself or herself or others, including but not limited to, the misappropriation to

himself, herself or to others." (Compl., ¶ 90).

Section 74 of the NYPOL establishes a Code of Ethics to be followed by all officers and

employees of a state agency, members of the legislature and legislative employees. See People v.

Gordon, 72 A.D.3d 841, 842, 898 N.Y.S.2d 257 (N.Y. App. Div. 2010) (holding that the Code of

Ethics set forth in NYPOL § 74 "prescribes the standards of conduct to which State employees,

including members of the Legislature, must adhere.")

Section 74(3)(d) provides, in relevant part:

> "No officer or employee of a state agency * * * should use or
> attempt to use his or her official position to secure unwarranted
> privileges or exemptions for himself or herself or others, including
> but not limited to, the misappropriation to himself, herself or to
> others of the property, services or other resources of the state for
> private business or other compensated non-governmental
> purposes."

N.Y. Pub. Off. Law § 74(3)(d).

Section 74(3)(h) provides, in relevant part:

> "An officer or employee of a state agency * * * should endeavor to
> pursue a course of conduct which will not raise suspicion among
> the public that he is likely to be engaged in acts that are in violation
> of his trust."

N.Y. Pub. Off. Law § 74(3)(h).

Section 74(4) of the NYPOL sets forth the remedies available for violations of that Section and provides, in relevant part:

> "In addition to any penalty contained in any other provision of law any such officer, member or employee who shall knowingly and intentionally violate any of the provisions of this section may be fined, suspended or removed from office or employment in the manner provided by law. Any such individual who knowingly and intentionally violates the provisions of paragraph * * * d * * * of subdivision three of this section shall be subject to a civil penalty in an amount not to exceed ten thousand dollars and the value of any gift, compensation or benefit received as a result of such violation. * * *"

N.Y. Pub. Off. Law § 74(4). There is no indication in that statute that a private right of action exists for a violation of the Code of Ethics by a state employee and the New York Court of Appeals has declined to recognize a private right of action in instances where, as here, "the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself[.]" Cruz v. TD Bank, N.A., 22 N.Y.3d 61, 71, 979 N.Y.S.2d 257, 2 N.E.3d 221 (N.Y. 2013) (quotations, brackets and citation omitted).[15]

Moreover, the New York Court of Appeals has held that, in the context of an attorney's violation of the Code of Professional Responsibility, "an ethical violation will not, in and of itself, create a duty that gives rise to a cause of action that would otherwise not exist at law."

---

[15] Plaintiff's requests to convert this claim "into an Article 78 hearing for purposes of deciding this claim using the [Court's] pendent jurisdiction" and to join the State University of New York and/or the New York State Ethics Commission "as necessary parties to pursue this claim," (Plf. Mem. at 25) are denied. See Carver v. Nassau County Interim Finance Authority, 730 F.3d 150, 155 (2d Cir. 2013) (holding that the district court abused its discretion in exercising pendent jurisdiction over Article 78 claims in light of "the state preference to try Article 78 claims in state court * * *.")

Shapiro v. McNeill, 92 N.Y. 2d 91, 97, 677 N.Y.S.2d 48, 699 N.E.2d 407 (N.Y. 1998). Since there is no discernible difference between an attorney's violation of an ethical rule prescribed by the Code of Professional Responsibility and a state employee's violation of the Code of Ethics prescribed by NYPOL § 74(3), any violation of the Code of Ethics by a state employee does not create a private right of action. See, e.g. Sash v. Rosahn, No. 08-cv-4032, 2009 WL 1683877, at * 3 n. 6 (S.D.N.Y. June 16, 2009), aff'd, 450 F. App'x 42 (2d Cir. Dec. 8, 2011) ("Violations of ethical rules do not create a private right of action."); Allen v. Antal, No. 12 civ. 8024, 2014 WL 2526977, at * 19 (S.D.N.Y. Mar. 13, 2014) ("The ethical rules governing lawyers have their own means of enforcement; a violation of such a rule does not, without more, give a client or former client a malpractice claim."); Arkin Kaplan LLP v. Jones, 42 A.D.3d 362, 366, 840 N.Y.S.2d 48 (N.Y. App. Div. 2007) (holding that a violation of the Code of Professional Responsibility, "in itself, would not create a private right of action[.]") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYPOL § 74(3) claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's NYPOL § 74(3) claims (sixth claim for relief) are dismissed in their entirety with prejudice for failure to state a claim for relief.[16]

III.    Conclusion

---

[16] Although plaintiff requests "[c]ompensatory damages to compensate [her] for breach of contract," (Compl., ¶ 100(e)), she does not assert a breach of contract claim, nor allege the existence of any contract between herself and any of the individual defendants. Accordingly, the amended complaint fails to state a claim for breach of contract. Plaintiff's request to amend her complaint to add two (2) state law claims seeking damages for tortious interference with contract and prima facie tort is denied on the grounds of futility. See Grullon, 720 F.3d at 140 (holding that leave to amend is not required where a proposed amendment would be futile); Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), cert. denied by Curtis Circulation Co. v. Anderson News, L.L.C., 133 S. Ct. 846, 184 L. Ed. 2d 655 (2013).

For the reasons stated herein, defendants' motion to dismiss is granted to the extent: (1) that plaintiff's claims against SUNY Farmingdale are dismissed in their entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; (2) that plaintiff's state law claims against the individual defendants in their official capacity are dismissed in their entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; (3) that plaintiff's ADEA and Section 1983 claims against the individual defendants in their official capacity are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction only insofar as they seek compensatory and punitive damages; (4) that plaintiff's ADEA claim, and any Title VII claim, against the individual defendants in their individual capacity are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief; (5) that plaintiff's Section 1983 claim alleging retaliation because she exercised her First Amendment right to freedom of association (fourth claim for relief), Section 1983 Equal Protection claim (fifth claim for relief) and state law claims (first, third and sixth claims for relief) against the individual defendants are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief; (6) that plaintiff's Section 1983 claim alleging retaliation because she exercised her First Amendment right to free speech (second claim for relief) against the individual defendants is dismissed with prejudice for failure to state a claim for relief, with the exception of plaintiff's claims that Icandela "interrogat[ed]" her and issued her a counseling memorandum on June 14, 2011; that Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her about her union activities on July 25, 2011; and that Keen sent a letter to her

54

indicating that her contract would not be renewed in August 2011, and the motion is otherwise denied.[17]

In light of this determination, the stay of discovery granted by order dated October 29, 2013 is vacated and this matter is respectfully referred to the Honorable Arlene R. Lindsay, United States Magistrate Judge, for an initial conference and all pretrial matters pursuant to Rule 5(D) of my individual rules. The pretrial conference scheduled to be held before me on June 25, 2014 at 11:15 a.m. is adjourned until December 18, 2014 at 11:15 a.m., by which time all discovery must be completed.[18]

Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order upon all parties as provided by Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose

---

[17] For the sake of clarity, only the following claims remain in this action: (1) plaintiff's ADEA claim (first claim for relief) against the individual defendants in their official capacity seeking injunctive and declaratory relief, including reinstatement of her employment; and (2) plaintiff's Section 1983 claim alleging retaliation because she exercised her First Amendment right to free speech (second claim for relief) against Icandela, Cepriano, Hall and Keen in their individual capacity based upon plaintiff's claims that Icandela "interrogat[ed]" her and issued her a counseling memorandum on June 14, 2011; that Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her about her union activities on July 25, 2011; and that Keen sent a letter to her indicating that her contract would not be renewed in August 2011. As all claims against SUNY Farmingdale have been dismissed, the Clerk of the Court shall amend the caption of this action accordingly.

[18] Accordingly, defendants' second motion to adjourn the June 25, 2014 pretrial conference, (Doc. No. 27), is denied as moot.

of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).


SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 19, 2014
       Central Islip, N.Y.