UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
AMY L. COLVIN,

                           Plaintiff,                     **REPORT AND**
                                                      **RECOMMENDATION**
                                                      CV 13-3595 (SJF)(ARL)

              -against-

HUBERT KEEN, PRESIDENT, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITY,
et al.,

                        Defendants.
--------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Plaintiff Amy L. Colvin ("Plaintiff") commenced this employment discrimination and

retaliation action against defendant State University College at Farmingdale, State University of

New York ("SUNY Farmingdale" or "the College") and defendants Hubert Keen ("Keen"),

President of SUNY Farmingdale; George LaRosa ("LaRosa"), Vice President of SUNY

Farmingdale; Patrick Calabria ("Calabria"), Vice President of SUNY Farmingdale; Lucia

Cepriano ("Cepriano"), Vice President of SUNY Farmingdale; Marvin Fischer ("Fischer"),

Campus Chief of Police at SUNY Farmingdale; Marybeth Incandela ("Incandela"), Director of

Human Resources at SUNY Farmingdale; James Hall ("Hall"), Director of Admissions at SUNY

Farmingdale; and Malka Edelman ("Edelman"), Director of Support Services at SUNY

Farmingdale (collectively, "the Individual Defendants" or "Defendants"), each in their official

and individual capacity.   Before the Court is the motion by the Individual Defendants for

summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.   For the reasons set

forth below, the undersigned recommends that the Individual Defendants' motion be granted in

part and denied in part.

# BACKGROUND

## I.      Factual Background

The following facts are drawn from the pleadings, the parties' Local Rule 56.1 Statements, and the parties' papers submitted in support of or in opposition to the instant summary judgment motion.   The facts cited are undisputed unless otherwise noted.   Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party.   *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).   Here, the facts are construed in the light most favorable to the Plaintiff.

### A.      Plaintiff's Employment at the College

Plaintiff began her employment at the College in August 6, 2007, working in Support Services for Students with Disabilities ("SSSD") and was supervised by defendant Edelman. Defs.' Rule 56.1 Stmt. ¶ 8.   Edelman and her office at the time reported to defendant Cepriano, Acting Provost and Vice President for Academic Affairs.   *Id.*   According to Plaintiff, shortly after she started as a Disability Counselor, Edelman subjected her to a hostile work environment. Decl. of Amy Colvin in Opp'n to Mot. for Summ. J. ("Pl.'s Decl.") ¶¶ 3-12.   Plaintiff remained in her position at SSSD until late 2008.   Defs.' Rule 56.1 Stmt. ¶ 9.

In January 2009, Plaintiff was transferred to the Admissions Department, where she was supervised by defendant Hall.   *Id.* ¶¶ 10-11.   While Plaintiff was employed as an Admissions Counselor from January 2009 to February 2013, her responsibilities included application review as well as recruiting and interviewing prospective students.   *Id.* ¶ 12.

According to Defendants, application review, also known as "decisioning," is by far the most important responsibility of an Admissions Counselor.   *Id.* ¶ 13.   Defendants claim that beginning in April 2010, the number of decisioning errors Plaintiff made began to increase, and the volume and character of the mistakes made by Plaintiff were far worse than the mistakes made by other employees in the Office.   *Id.* ¶ 15.   Defendants further assert that when Plaintiff

was asked about her alleged errors, she was usually unable to offer any explanation as to why she made her decisions. *Id.* ¶ 17. According to Defendants, some of these errors that came to defendant Hall's personal attention in 2010 and 2011 were as follows:

| Date | Error |
|------|-------|
| April 2010 | Accepted to Visual Communications program without art exam and portfolio review. |
| April 2010 | Accepted applicant in "SAADCRV"[1] although Plaintiff intended to deny application. She sent denial letter but applicant paid tuition upon receipt of welcome letter from department chair. [The College stood] by the admission. |
| May 2010 | Accepted applicant in SAADCRV although Plaintiff intended to deny application. She sent denial letter but applicant paid tuition upon receipt of welcome letter from department chair. [The College stood] by the admission. |
| Nov. 2010 | Took shortcut in SAADCRV to enter 07 decision (Accepted-Post Registration), and 07 decision was inappropriate. |
| July 2011 | Accepted applicant into Science for the Health Professions who did not have a bachelor's degree. Program is a post- baccalaureate certificate program. |
| Aug. 2011 | Accepted applicant into Undeclared Major, but based on the number of credits the applicant had from community college, the applicant was ineligible for acceptance into the Undeclared Major. Undeclared Major is a one year program for applicants with little or no prior college experience. |

*Id.* ¶ 18 (citations to record omitted). Plaintiff disputes the characterization of these incidents as "errors" and notes that granting admission is a subjective process. Pl.'s Decl. ¶ 36; Pl.'s Rule 56.1 Counter-Stmt. ¶ 15.

---

[1]  SAADCRV is the Admissions Decision Form in which all application decisions are entered. Defs.' Rule 56.1 Stmt. ¶ 18 n.1.

## B. The Yoga Incident

In May 2011, defendant Cepriano received a memorandum from the Chief of Police, Marvin Fisher, regarding Plaintiff's behavior during the arrest of another employee (referred to as the "Yoga Incident"). Defs.' Rule 56.1 Stmt. ¶ 21. The police report stated that on May 18, 2011, an officially suspended Farmingdale employee, Sherry Buch, was reported to have been criminally trespassing by attending a yoga class on campus. *See* Decl. of Lucia Cepriano, dated Apr. 24, 2015, Ex. B. Upon arrival at the class, the officers directed Ms. Buch to take her belongings, leave the room, and accompany the officers to the vestibule. *Id.* According to the police report, while Ms. Buch was complying, Plaintiff – who had been attending the same yoga class – became involved and insisted that the police not disrupt the class or direct Ms. Buch to leave. *Id.* Although Plaintiff was told she was not permitted to accompany Ms. Buch, she allegedly followed the officers and proceeded to interfere with their official duties, including making an arrest. *Id.* Plaintiff allegedly became loud and belligerent and yelled advice to Ms. Buch. *Id.*

Plaintiff's version of the Yoga Incident is different than Defendants'. According to Plaintiff, she spoke directly to the police officers in the hallway and told them that she wanted to get Ms. Buch a union representative and legal representation. *See* Pl.'s Decl. ¶ 21. She acted peacefully and respectfully at all times. *Id.* One officer suggested that this matter was not her concern and threatened to arrest and handcuff her. *Id.* At this point, she told the officers that she was an attorney and stated it would be unfair to arrest her for trying to help someone obtain such union and legal representation. *Id.* She disputes the officers' account and states that she in no way interfered with their official duties. *Id.*

In support of her claims, Plaintiff submits the affidavit of Sherri Buch who states that the police were loud and aggressive, and Plaintiff introduced herself as a friend who was trying to help her. Aff. of Sherri Buch, dated Jan. 16, 2013 ("Buch Aff."), ¶¶ 2-3. Ms. Buch further states that Plaintiff calmly and from a safe distance reminded her that she had a right to a union representative and a lawyer. *Id.* ¶ 3.

Plaintiff also submits the affidavit of Deborah Amato, the Secretary for the United University Professors Office at SUNY Farmingdale. Ms. Amato states that she was participating in the yoga class that day, and the police were "loud and upsetting the class." Aff. of Deborah Amato, dated Jan. 29, 2013 ("Amato Aff."), ¶ 3. According to Ms. Amato, Plaintiff stood up and said she wanted to help the employee who was upset. *Id.* ¶ 4. The police officers were allegedly annoyed that Plaintiff was trying to help Ms. Buch, whom the police were "trying to intimidate." *Id.* ¶ 5.[2]

Based on a review of the police report, defendant Cepriano sent a memo to defendant Incandela, the Director of Human Resources, asking that she investigate the matter further. Defs.' Rule 56.1 Stmt. ¶ 22. In response, defendant Incandela and Assistant Director of Human Resources, Melissa Frisina, interviewed the police officers, the yoga instructor and a participant in the yoga class. *Id.* ¶ 23. Since the latter two interviews allegedly corroborated that of the officers, defendant Incandela felt there was enough evidence to explore whether Plaintiff had

---

[2] Plaintiff also submits a "witness interrogation" purporting to be questions Plaintiff asked a "Ms. Cassery." *See* Ingoglia Aff., dated May 22, 2015, Ex. K. The interrogation is unsigned and not sworn and, accordingly, will not be considered by the Court. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

committed acts for which she may be subject to formal discipline.  *Id.* ¶ 24.   On June 9, 2011,

defendant Incandela sent Plaintiff a letter directing her to report to her office on June 14, 2011 to

be questioned concerning the matter as allowed for under the applicable collective bargaining

agreement of Plaintiff's union, the United University Professionals ("UUP").  *Id.* ¶ 25.   On June

14, 2011, Plaintiff appeared for her questioning.  *Id.* ¶ 26.   In addition to Incandela and

Plaintiff, William Capowski, UUP Labor Relations Specialist, Vicki Janik, UUP Union

Representative and Melissa Frisina, Assistant Director of Human Resources were present.  *Id.*

At the meeting, Plaintiff stated that as an attorney, she took an oath to uphold the constitution, so

when the Officers came into the room, she was only trying to help Ms. Buch.  *Id.* ¶ 27.

On June 27, 2011, defendant Incandela issued Plaintiff a counseling memorandum that

would be placed in her personnel file.  *Id.* ¶ 28.   The counseling memo provides, in pertinent

part, as follows:

> On May 18, 2011, two university police officers arrived at Ward
> Hall to arrest an employee in the class.   Despite the fact that these
> officers asked the employee to step outside, you inserted yourself
> into the situation.   You identified yourself as an attorney and
> offered advice and guidance to the employee being arrested.   You
> followed the police officers to the outside vestibule, despite being
> asked to remain inside the class.   While you stated you were
> invited to follow the officers to the vestibule, interviews with your
> fellow classmates and the police officers indicate otherwise.
>
> According to the police report, you told the officers that you were
> going to record the arrest and you reached into your purse to get a
> cell phone.   You stated that you did not recall that particular event,
> yet the police officers stated it was that act which caused them to
> actually handcuff the employees being arrested.   The officers
> stated the arrestee was being cooperative, while your actions were
> escalating tension in an already tense situation.
>
> You stated you had no knowledge as to why the police officers
> were present, and therefore had no knowledge as to why the
> employee was being arrested.   By your own admission, the police

6

officers did not display any level of brutality in their conduct. Yet, you made the assumption that the officers were acting improperly. Please be advised that interfering with police business is unprofessional and may have resulted in your arrest.

Going forward, it is expected that your personal conduct will be professional, and you will not interfere with any police business conducted on the Farmingdale State College campus.

Decl. of Marybeth Incandela, dated Apr. 24, 2015, Ex. 5.

According to Defendants, a counseling memorandum is placed in an employee's personnel file and after three years, under the UUP contract, the employee can request that it is removed from her personnel file. Defs.' Rule 56.1 Stmt. ¶ 30. According to Plaintiff, she was never advised of this fact and is unaware of any specific chapter in the UUP contract which provides for this option. Pl.'s Rule 56.1 Counter-Stmt. ¶ 30. The parties dispute whether a counseling memorandum is formal discipline: Defendants maintain that it is not while Plaintiff asserts that it is. Defs.' Rule 56.1 Stmt. ¶ 29; Pl.'s Rule 56.1 Counter-Stmt. ¶ 29.

### C.    Plaintiff's 2011 Reappointment

In July 2011, Plaintiff was completing a prior two-year appointment. Defs.' Rule 56.1 Stmt. ¶ 31. On July 8, 2011, defendant Hall completed Plaintiff's term appointment notice and only recommended her for a one-year reappointment. *Id.* ¶ 32. Hall noted his concerns regarding Plaintiff's involvement in so many campus activities not related to her Admissions Office duties which reduced her ability to devote full attention to admission duties. *Id.* According to Plaintiff, Hall only recommended her for one year as a repercussion for the Yoga Incident, her union activities, and age bias. Pl.'s Rule 56.1 Counter-Stmt. ¶ 32. In support of this assertion, Plaintiff points to the deposition testimony of Deborah-Ann Nilsen, former Assistant Director of Admissions, who testified that she believed that Plaintiff's termination was

related to the Yoga Incident; that before the Yoga Incident, she did not hear anything bad about Plaintiff except "the occasional mistakes" but after the incident, she "probably heard more stuff"; and that Hall was stressed after the Yoga Incident. Nilsen Dep., dated Feb. 12, 2015 ("Nilsen Dep."), at 63, 72-73, 86, 89, 95.

Defendant Hall sent his recommendation to Cepriano, who on July 26, 2011, did not recommend Plaintiff's reappointment. Defs.' Rule 56.1 Stmt. ¶ 33. Hall testified that he could not recall another time Cepriano denied recommendation for reappointment after he made a recommendation to reappoint, and he was "[s]urprised to some degree" that Cepriano did not take his recommendation. *See* Hall Dep., dated Mar. 11, 2015 ("Hall Dep."), at 110. On August 2, 2011, defendant Keen, the President of SUNY Farmingdale, sent Plaintiff a letter notifying her of her non-reappointment. *Id.*

When Incandela learned that there was no current evaluation in place for Plaintiff, she asked Hall to complete Plaintiff's 2011 evaluation. *Id.* ¶ 34. Incandela testified that she surprised by Cepriano's recommendation for non-renewal and was caught completely unprepared. *See* Incandela Dep., dated Mar. 12, 2015, at 102.

Sometime in 2011, defendant Hall solicited three anonymous peer reviews as part of Plaintiff's 2011 evaluation process. Defs.' Rule 56.1 Stmt. ¶ 19. In these peer reviews, some of Plaintiff's colleagues expressed frustration with Plaintiff's alleged propensity for making routine errors and her poor attitude. *Id.* ¶ 20. Plaintiff counters that Hall resorted to doing "anonymous" peer reviews only after the Yoga Incident and notes that because the reviews are anonymous, she cannot cross-examine the authors. Pl.'s Rule 56.1 Counter-Stmt. ¶ 19. In her

declaration, however, she avers that she knows who the anonymous reviewers are. Pl's Decl. ¶ 40.

Defendant Hall completed Plaintiff's 2011 evaluation on August 18, 2011 and met with Plaintiff regarding it. *Id.* ¶ 35. Defendant Hall's evaluation of Plaintiff rated her on three out of five areas as needing improvement. *Id.* ¶ 36. In one such category where defendant Hall found Plaintiff lacking, he stated that:

> Ms. Colvin has struggled with application review as she does not yet possess the knowledge needed to decision applications correctly. She is very willing to participate in application review but has often admitted applicants into academic programs that they are not eligible for, denied applicants admission into programs that they are eligible for, and has demonstrated a general lack of knowledge of the admission criteria.

*Id.* ¶ 37. Plaintiff claims that Hall's evaluation was retaliatory, Pl.'s Rule 56.1 Counter-Stmt. ¶¶ 36-37, and that she was the only person in the Department who was singled out to be formally evaluated, Pl.'s Decl. ¶ 33. In this regard, she points to Hall's deposition testimony wherein he stated that from 2003 to 2010, he did not do any written evaluations of staff. Hall Dep., dated Mar. 11, 2015, at 85-86. In 2011, he did Plaintiff's evaluation and in 2012, the entire staff was evaluated. *Id.* at 85.

Pursuant to the UUP contract, employees are entitled to a one-year notice regarding whether their appointment will be renewed. Defs.' Rule 56.1 Stmt. ¶ 39. According to Defendants, since it was determined that an employee could not be non-renewed without a current evaluation in place, defendant Incandela recommended that Plaintiff be reappointed for a one-year term. *Id.* ¶ 40. Plaintiff was notified of such reappointment by letter dated September 8, 2011, from President Keen. *Id.* ¶ 41. According to Plaintiff, since there was only positive

feedback in her file, Defendants needed time to "build a case" against her.   Pl.'s Decl. ¶ 34.

### D.      Plaintiff's Promotion Request

On February 23, 2011, Plaintiff had applied for an in-title salary increase promotion which was sent to the Office of Human Resources by Cepriano.   *Id.* ¶ 42.   According to the Application instructions, Plaintiff was to send her promotion application to her supervisor, defendant Hall, for his recommendation.   *Id.* ¶ 44.   According to Defendants, Cepriano and Hall would then make their separate recommendations as to whether Plaintiff deserved an in-title salary increase and return their recommendations to the Office of Human Resources.   *Id.* ¶ 45.

On September 1, 2011, Hall emailed that he did not recommend an in-title salary increase for Plaintiff "as she is not proficient enough in her work for the Admissions Office to warrant a promotion."   *Id.* ¶ 47.   In September 2011, defendant Incandela did not recommend that Plaintiff receive a promotion, and in October 2011, defendant Cepriano concurred.   *Id.* ¶ 48. Plaintiff was notified of this by letter dated November 3, 2011 from President Keen.   *Id.* Plaintiff disputes that Hall, Incandela, Cepriano and Keen's reasons for the non-promotion were performance based and instead, asserts that it was based on "retaliation and bias."   Pl.'s Rule 56.1 Counter-Stmt. ¶ 48.

On January 3, 2012, as a result of a re-organization, defendant Calabria took over responsibility for the Office of Admissions from Cepriano, as well as other department areas. Defs.' Rule 56.1 Stmt. ¶ 49.   When Calabria became defendant Hall's supervisor, he required that evaluations for subordinate staff be completed on an annual basis.   *Id.* ¶ 50.

### E. Plaintiff's 2012 Non-Reappointment

According to Defendants, Plaintiff's overall performance during the 2011-2012 evaluative period did not improve. *Id.* ¶ 51. As a result, Hall's June 27, 2012 evaluation of Plaintiff stated that Plaintiff continued to struggle with application review and did not display the knowledge needed to decision applications correctly. *Id.* ¶ 55. Hall did not recommend Plaintiff for an additional reappointment in 2012. *Id.* ¶ 61. This recommendation was approved by Calabria. *Id.* Thereafter, Plaintiff was notified by letter from President Keen dated July 26, 2012 that her term employment would not be renewed, which meant that her employment with the College would end on August 5, 2013. *Id.* ¶ 62. Plaintiff disputes that her non-reappointment was performance-based and instead asserts that it was in retaliation for the May 2011 Yoga Incident, union activities and based on her age. Pl.'s Rule 56.1 Counter-Stmt. ¶¶ 61-62.

### F. Plaintiff's Charge of Discrimination

On December 28, 2012, Plaintiff filed a complaint in the New York State Division of Human Rights ("NYSDHR"). Defs.' Rule 56.1 Stmt. ¶ 65. Her complaint alleged discrimination based on age. *Id.* The NYSDHR dismissed the claim on June 28, 2013, finding no probable cause. *Id.*

### G. Plaintiff's Dismissal

According to Defendants, after Plaintiff received her 2012 non-renewal notice, Plaintiff's poor performance continued. *Id.* ¶ 66. As a result of her continued alleged errors, SUNY Farmingdale notified Plaintiff that, effective February 27, 2013, pursuant to her union contract, it

was paying out her remaining salary for the duration of her term appointment (August 5, 2013) and her last day on campus would be February 27, 2013.  *Id.* ¶ 69.

### H.     Evidence Regarding Alleged Age Discrimination

At the time Plaintiff filed a complaint with the NYSDHR in December 2012, the Office of Admissions had 23 employees.  *Id.* ¶ 70.   The employees in the Office of Admissions ranged in age between 23 and 89 years, and the average age of the employees in the department was 52, as was Plaintiff.  *Id.*   Twelve of Plaintiff's former fellow twenty-two employees were the same age or older than Plaintiff.  *Id.*

In December 2012, there were nine employees who generally handled "decisioning" applicants.   These employees were: Ryan Neary (age 31), Kathleen Dunn (age 48), Jeanne Soto (age 39), Deborah-Ann Nilsen (age 50), Kathleen Ignozzi (age 59), Catherine Malnichuck (age 62), George Krauss (age 63), John Jordan (age 72), James Hall (age 52) and Plaintiff (age 52). *Id.* ¶ 71.   While Plaintiff concedes that these employees did decisioning, she asserts that they did not handle equal workloads as three carried a reduced workload, two were part-time and one was in poor health.   Pl.'s Rule 56.1 Counter-Stmt. ¶ 71; Pl.'s Decl. ¶¶ 17, 63.

Plaintiff alleges that Defendants were looking to remove older workers and replace them with younger workers.   In support of this allegation, Plaintiff proffers the following: (1) she "personally spoke to Betty Barker" who told her that Hall told her she would make more money by retiring than continuing to work.   Pl.'s Decl. ¶ 64.   Hall testified at his deposition that he told Ms. Barker that she might want to talk to someone about retiring because the state was offering lucrative retirement deals and she her retirement had maxed out.   Hall Dep. at 207; (2) John Jordan "personally" told her that he had a conversation with Hall where Hall relayed to him the

"unsubtle message" that Calabria wanted him to get a retirement date from Jordan, Pl.'s Decl. ¶ 65; (3) Calabria allegedly stated at his deposition that he told Hall to ask Cathy Mulnichuck for a retirement date, though Plaintiff cites to deposition pages which are not part of the record, *id.* ¶ 66; and (4) younger employees were given promotions while older ones were not, though Plaintiff cites to an unidentified chart[3] and to deposition pages not in the record, *id.* ¶ 70.

Plaintiff also avers to many facts in her declaration for which she cites no evidence. For example, according to Plaintiff, (1) older employees were pressured to work 5-hour shifts with no breaks while younger workers were given more challenging work, *id.* ¶¶ 71-72; (2) younger employees were not formally evaluated and were permitted to participate in activities that she was not allowed to partake in, *id.* ¶¶ 73-74; (3) younger counselors were permitted to be members of grievance committees though she was not, *id.* ¶ 75; (4) Hall gave a project she was responsible for to another younger counselor, *id.* ¶ 76; and (5) she was criticized for being away from the office to attend professional development conferences but another counselor (who is actually older than her) was permitted to attend, *id.* ¶ 77. Lastly, at her deposition, Plaintiff identified the older workers Defendants were allegedly trying to remove as herself and Ms. Malnichuck. *See* Pl.'s Dep., dated Dec. 15, 2014 ("Pl. Dep."), at 53-55. In her declaration, she also refers to older workers Betty Barker and John Jordan. *See* Pl.'s Decl. ¶¶ 64-65.

Plaintiff also states that Hall "went on to hire three younger people as professional counselors: Ryan Neary in his 30's; Nicole Dose in her 20's and Richard Beatty in his 20's to replace the three of us who were no longer there." Pl.'s Decl. ¶ 67. She cites solely to the

---

[3] The chart is mistakenly referred to as a copy of Plaintiff's July 8, 2011 reappointment recommendation in Plaintiff's counsel's affidavit. *See* Ingoglia Decl., dated May 22, 2015, ¶ 26.

deposition transcript of Ms. Nilsen, former Assistant Director of Admissions, who states that these three employees were hired prior to Ms. Nilsen leaving the department.   Nilsen Dep. at 78-79.

With regard to Ryan Neary, Defendants state that he was 31 years old when hired in May 2012 to replace Lauren Ulatowski (also age 31) after Ms. Ulatowski got married and moved to Ohio with her husband.   Defs.' Rule 56.1 Stmt. ¶ 72.   Mr. Neary was hired nearly two months before the decision was made to recommend that Plaintiff not be reappointed.   *Id.*   Plaintiff concedes as much but asserts that Defendants already had a plan to terminate her at that time. Pl.'s Rule 56.1 Counter-Stmt. ¶ 68.

With regard to Nicole Dose, Defendants assert that she (currently 28 years of age) was hired as an Instructional Support Associate after Plaintiff left SUNY Farmingdale and her duties for the Admissions Office relate to using complex informational technology programs to assist the College in recruiting high-caliber candidates.   Defs.' Rule 56.1 Stmt. ¶ 53.   Prior to this position, Ms. Dose has worked for the College since 2005 as an intern or in a clerical position. *Id.*   Ms. Dose recently was promoted to Assistant Admissions Counselor.   *Id.*   Plaintiff points to Hall's deposition testimony wherein he discusses how Ms. Dose was originally not selected as a finalist in the original search for her position with Admissions but was only selected after Calabria changed the committee head.   Hall Dep. at 208-09.   According to Plaintiff, the original search committee was aborted and a new search committee was formed containing members "who would do her bidding and hire her, as her mother was a high-ranking administrative assistant for VP Corti."   Pl.'s Decl. ¶ 69.

In 2012, Ms. Nilsen, who is currently 55, received a promotion from Assistant Director of Admissions to Associate Director of Transfer Services, and Ms. Soto, who is currently 39, was promoted to Assistant Director of Admissions thereafter.   Defs.' Rule 56.1 Stmt. ¶ 74.   Citing to no evidence, Plaintiff disputes that Ms. Nilsen was promoted but argues that she was transferred as a punishment against her will.   Pl.'s Rule 56.1 Counter-Stmt. ¶ 74.   Ms. Nilsen testified at her deposition, however, that her move from Admissions to Transfer Services was a promotion.   *See* Nilsen Dep. at 6-7.

## II.     Procedural Background

Plaintiff, who was originally representing herself *pro se*,[4] commenced this action on June 25, 2013.   DE 1.   Plaintiff filed an Amended Complaint on August 5, 2013.   DE 9. The Amended Complaint alleges six causes of action:

> (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(c)(1) and 626(E), *et seq.* and New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, *et seq.*; (2) retaliation for exercising her First Amendment freedom of speech rights pursuant to 42 U.S.C. § 1983; (3) retaliation in violation of New York Civil Service Law § 75-b; (4) retaliation for exercising her First Amendment freedom of association; (5) retaliation by denying plaintiff Equal Protection in violation of the Fourteenth Amendment by creating a hostile work environment; and (6) violation of Public Officers Law § 74(d) and (h) by their "unethical behavior."

*Id.*

Defendants filed a motion to dismiss the Amended Complaint on September 27, 2013. DE 12.   By Opinion and Order dated June 19, 2014, Judge Feuerstein dismissed Plaintiff's

---

[4]  Although plaintiff was proceeding pro se, she is an attorney admitted to practice in the State of New York since 1986.   *See* DE 65 at 1 n.1.

claims against SUNY Farmingdale in their entirety for lack of subject matter jurisdiction.   DE

28.   She also dismissed the following claims against the Individual Defendants: (1) Plaintiff's

state law claims against the Individual Defendants in their official capacities for lack of subject

matter jurisdiction, (2) Plaintiff's ADEA and Section 1983 claims against the Individual

Defendants in their official capacities to the extent that they seek compensatory and punitive

damages for lack of subject matter jurisdiction, (3) Plaintiff's ADEA and Section 1983 claims

against the Individual Defendants in their individual capacities for failure to state a claim,

(4) Plaintiff's Section 1983 claim alleging retaliation because Plaintiff exercised her First

Amendment right to freedom of association (the Fourth Cause of Action), Equal Protection claim

(the Fifth Cause of Action) and state law claims (the First, Third and Sixth Causes of Action) for

failure to state a claim and (5) Plaintiff's Section 1983 claim alleging retaliation because she

exercised her First Amendment right to free speech (the Second Cause of Action) against the

Individual Defendants for failure to state a claim, "with the exception of plaintiff's claims that

Icandela 'interrogat[ed]' her and issued her a counseling memorandum on June 14, 20 11; that

Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her

about her union activities on July 25, 2011; and that Keen sent a letter to her indicating that her

contract would not be renewed in August 2011."   *Id.* at 54-55.   For the sake of clarity, Judge

Feuerstein clarified which claims remained pending:

> (1) plaintiff's ADEA claim (first claim for relief) against the
> individual defendants in their official capacity seeking injunctive
> and declaratory relief, including reinstatement of her employment;
> and (2) plaintiffs Section 1983 claim alleging retaliation because
> she exercised her First Amendment right to free speech  (second
> claim for relief) against Icandela, Cepriano, Hall and Keen in their
> individual capacity based upon plaintiff's claims that Icandela
> "interrogat[ed]" her and issued her a counseling memorandum on
> June 14, 2011; that Cepriano recommended that she not be

16

> reappointed on July 21, 2011; that Hall counseled her about her
> union activities on July 25, 2011; and that Keen sent a letter to her
> indicating that her contract would not be renewed in August 2011.

*Id.* at 55 n.17.   The Court also found that based on the three-year statute of limitations,

Plaintiff's Section 1983 claims were dismissed in their entirety prior to June 25, 2010.   *Id.* at 35.

Thereafter, Plaintiff moved for reconsideration, and Defendants cross-moved for

reconsideration.   DE 29, 34.   By Opinion and Order dated May 8, 2015, both motions were

denied.   DE 68.

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."   Fed. R. Civ. P. 56(c).   "An issue of fact is genuine if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'   A fact is material if it 'might

affect the outcome of the suit under the governing law.'"   *Roe v. City of Waterbury*, 542 F.3d 31,

35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   In

determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying

affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most

favorable to the party opposing the motion."   *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d

Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see*

*Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II.     Analysis

### A.     Plaintiff's Claims under the ADEA[5]

As noted above, Judge Feuerstein ruled that Plaintiff's ADEA claim survived only as against "the individual defendants in their official capacity seeking injunctive and declaratory relief, including reinstatement of her employment." DE 28 at 55 n.17. Defendants now argue

---

[5] Plaintiff argues in her Memorandum of Law in Opposition that she has proved a prima facie case of retaliation under both the ADEA and Title VII. *See* Pl.'s Mem. at 15. Judge Feuerstein's June 19, 2014 Opinion and Order, however, dismissed all the Title VII claims in this action. DE 28 at 17 n.5 ("Although plaintiff refers to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., in her amended complaint . . . she does not base any of her claims upon that statute. In any event, any such claim fails since plaintiff does not allege that defendants discriminated against her because of her gender or that she is a member of any other class protected by that statute.").

that at her deposition, Plaintiff further limited her claim of age discrimination as directed against Hall only.   When asked at her deposition who she claimed discriminated against her based on her age, Plaintiff responded with Hall's name only.   Pl. Dep. at 38.   Later in her deposition, she testified as follows:

> Q.   Are you claiming that Hubert Keen discriminated against you based on your age?
>
> A.   Not – I'm not sure.
>
> Q.   It's your allegation you're claiming.   It's your Complaint.   You said, "The defendants."   I'm just trying to figure out who's in that claim.
>
> A.   I mean, maybe only as a representative of the college.   But he didn't say or do anything to me personally.
>
> Q.   So other than Jim Hall, which of the other defendants that are in the caption of your Complaint are you claiming discriminated against you based on age?
>
> A.   None.
>
> Q.   Just Jim [Hall]?
>
> A.   Yes.

*Id.* at 47-48.

In response, Plaintiff disputes that she limited her age discrimination claim as against Hall only.   *See* Pl.'s Decl. ¶ 62.   Instead, she contends that Hall was responsible for "direct discrimination, while the others, including his supervisors and representatives of the college were also responsible for indirect age bias."   *Id.*   In turn, Defendants argue that they relied upon Plaintiff's deposition testimony when posing questions during the rest of her deposition as well as during the remainder of the discovery period.   Defs.' Reply at 2.   Should the Court finds that Plaintiff's claim for age discrimination is against all of the Defendants, Defendants ask that

discovery be reopened so that they can adequately explore Plaintiff's claims as against Defendants other than Hall.   *Id*   The Court need not resolve this issue because even assuming Plaintiff's ADEA claims against all Defendants survived her deposition testimony, these claims would still fail because Plaintiff has not raised a genuine issue of material fact indicating that she was discriminated against because of her age by *any* of the Defendants.

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age."   29 U.S.C. § 623(a)(1) (emphasis added).   ADEA claims are addressed under the *McDonnell Douglas* burden-shifting framework.   *Gorzynski v. JetBlue Airways Corp*, 596 F.3d 93, 106 (2d. Cir. 2010).    Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   If the plaintiff meets that initial burden, the burden then shifts to the defendant to proffer "some legitimate, nondiscriminatory reason" for the challenged action.    *Id.*   If the defendant does so, the burden shifts back to the plaintiff to show that "age was the 'but-for' cause of the challenged adverse employment action," rather than merely a motivating factor in the decision.   *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009).   Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.   *Gorzynski*, 596 F. 3d at 106.   Instead, "to resist summary judgment on an ADEA claim successfully, a plaintiff must demonstrate that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanations are pretextual and that, but for the plaintiff's age, the employer would not have

taken the action it did." *Chapotkat v. County of Rockland*, 605 F. App'x 24, 26 (2d Cir. 2015)

(citing *Gorzynski*, 596 F.3d at 107).

To establish a prima facie case of age discrimination, a plaintiff must show that "she was

within the protected age group, (2) that she was qualified for the position, (3) that she

experienced adverse employment action, and (4) that such action occurred under circumstances

giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. Here, there is no

dispute that Plaintiff has established the first three parts of her prima facie case. Assuming that

Plaintiff has demonstrated a prima facie case of discrimination, Defendants have stated a

legitimate, nondiscriminatory reason for their actions -- Plaintiff's poor work performance. *See*

*O'Kane v. Lew*, No. 10-CV-5325, 2013 WL 6096775, at *10 (E.D.N.Y. Nov. 20, 2013) ("Poor

work performance is well-established as a legitimate, nondiscriminatory reason for firing an

employee."). The burden thus shifts back to Plaintiff to show that Defendants' explanations are

a pretext for impermissible discrimination. *See Famoso v. Marshalls of MA, Inc.*, No.

12-cv-4863, 2015 WL 5793308, at *10 (E.D.N.Y. Sept. 30, 2015).

Plaintiff has failed to raise evidence sufficient for a reasonable fact-finder to find that

Defendants' rationale is pretextual. The record reflects that in December 2012, Plaintiff was 52

years old, which was also the average age of the employees in the Admissions Office, whose ages

ranged from between 23 and 89 years old. Moreover, the majority of the 22 employees under

Defendant Hall's supervision were the same age or older than Plaintiff. Notwithstanding these

statistics, Plaintiff claims that the Admissions Department was looking to remove older workers

and replace them with younger workers. In support of this claim, she primarily relies on

unsupported assertions and inadmissible hearsay. For example, she relies on conversations she

21

allegedly had with other employees but does not submit affidavits from those employees. Additionally, she asserts that older counselors were treated unfairly but cites only to her own declaration in support. *See Burke v. Evans*, 248 F App'x 206, 208 (2d Cir. 2007) (affirming grant of summary judgment when "plaintiff did not produce any evidence beyond vague recollections of conversations with co-workers, anecdotes based on hearsay, and other unsupported speculation to support his claim[s]"). She argues that younger employees received promotions but Defendants point out that Ms. Nilsen (age 50) was also promoted. Although Plaintiff asserts that Ms. Nilsen was not promoted but was rather transferred against her will, she cites no evidence to support this assertion. Indeed, Ms. Nilsen herself testified that she considered her move a promotion. *See* Nilsen Dep. at 6-7.

Lastly, Plaintiff argues that Defendants hired three younger people as counselors – Ryan Neary (31); Nicole Dose (age 28); and Richard Beatty (in his 20s) – "to replace the three of us who were no longer there." Pl.'s Decl. ¶ 67. The only evidence she proffers in support of this allegation is the deposition testimony of Ms. Nilsen who testified that these three individuals were hired by Admissions before she left the department. Nilsen Dep. at 79. Defendants, however, proffer evidence demonstrating that two of the older employees Plaintiff refers to – Betty Barker (age 59) and John Jordan (age 72) – are still working, Yet another older worker, Ms. Malnichuck, retired due to an illness.

With regard to the three new hires, Defendant proffers undisputed evidence that Ryan Neary was hired two to three months before Plaintiff was notified that she would not be renewed in August 2012 and well before her buyout in February 2013. *See* Hall Decl. ¶ 49. They also offer evidence supporting the fact that Mr. Neary (age 31) was hired to replace to Lauren

Ulatowski (also age 31) after Ms. Ulatowski got married and moved to Ohio wither husband. *Id.* Notwithstanding this evidence, Plaintiff asserts, without support, that Mr. Neary was hired to replace her. Plaintiff's conclusory allegations offered with no support in the record are insufficient to defeat summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

The record also reflects that Nicole Dose (age 28) worked for the College since 2005 as an intern or in a clerical position and was hired as an Instructional Support Associate after Plaintiff left SUNY Farmingdale. Hall Decl. ¶ 53. Although Plaintiff makes much of the fact that Ms. Dose was not hired by Admissions until a new search committee was formed containing members "who would do her bidding and hire her, as her mother was a high-ranking administrative assistant for VP Corti," Pl.'s Decl. ¶ 69, such statement, even if assumed to be true, has no bearing on age discrimination. If anything, it shows that Ms. Dose was hired not because of her age but because of her mother's influence.

Lastly, the parties point to no evidence in the record regarding the hiring of Richard Beatty.

Based on the above, the Court finds that a reasonable juror could not find that Plaintiff's age was the but-for cause of the challenged adverse employment actions. Accordingly, the Court respectfully recommends that Plaintiff's ADEA claims be dismissed in their entirety.

**B.        Plaintiff's Request for Leave to Amend her ADEA Claims**

Plaintiff – for the first time in her opposition to Defendants' motion for summary judgment – purportedly raises a new theory of liability under the ADEA, i.e., that she engaged in

protected activity by filing a complaint with the NYSDHR and was terminated in retaliation for that filing two months later.   *See* Pl.'s Mem. at 13, 15, 16.   Defendants oppose this new theory of liability and argue that "the Amended Complaint does not allege that [Plaintiff] suffered retaliation for complaining about alleged age discrimination."   Defs.' Reply Mem. at 4 n.2. Plaintiff points out that she filed this complaint *pro se* and requests that the Court allow her to amend her complaint to assert this claim in the interest of justice.   See Pl.'s Mem. at 16.

As an initial matter, the Court notes that although Plaintiff filed this action *pro se*, she is a practicing attorney.   *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]*ro se* attorneys such as Holtz typically "cannot claim the special consideration which the courts customarily grant to pro se parties.") (citation and internal quotation marks omitted), *abrogated on other grounds by Gross*, 557 U.S. 167; *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 295 n.2 (E.D.N.Y. 2008) ("[T]he rules afforded pro se litigants are not relaxed when that litigant is also an attorney.").   Equally important, Plaintiff retained counsel on October 31, 2014, and that attorney had many months to seek leave to replead, if he believed that repleading was warranted.   Nonetheless, for the reasons stated below, the Court finds that it cannot rule on Plaintiff's motion to amend at this time absent clarification from Judge Feuerstein; accordingly, Plaintiff's motion to amend is redirected to Judge Feuerstein in the first instance.

Despite Defendants' assertions to the contrary, this "new" theory of liability is arguably raised in the Amended Complaint.   Although retaliation based on Plaintiff's NYSDHR charge is not specifically pled as a separate cause of action, the pleading does allege that "[i]n retaliation for filing an improper practice complaint with [the New York State Public Employment Relations Board] on September 4, 2012 and a discrimination complaint with the Division of

Human Rights on December 28, 2012, plaintiff was terminated on February 27, 2013 in advance of her August 5, 2013 contract date." Am. Compl. ¶ 67. Nonetheless, this lone allegation does not appear to have been pursued and, as noted above, on June 19, 2014, Judge Feuerstein ruled that only the following claims remain in this action: (1) plaintiff's ADEA claim (first claim for relief) against the individual defendants in their official capacity seeking injunctive and declaratory relief, including reinstatement of her employment; and (2) plaintiffs Section 1983 claim alleging retaliation because she exercised her First Amendment right to free speech limited to certain alleged adverse actions allegedly arising out of the Yoga Incident. DE 28 at 55 n.17. After Plaintiff moved for reconsideration of this Order, Judge Feuerstein noted that she "did not overlook [Plaintiff's] filing of the administrative complaints" and "[t]o the extent plaintiff [wa]s asserting that defendants retaliated against her for her filing of those administrative complaints, the filing of administrative grievances and complaints did not amount to speech as [a] citizen[] for First Amendment purposes." DE 68 at 8 (citations and internal quotation marks omitted). Plaintiff's retaliation claims in the context of the ADEA were not addressed. Thus, it is unclear to the Court whether the claims Plaintiff seeks to add via amendment are already viable or have been dismissed by Judge Feuerstein. Accordingly, the Court declines to rule on Plaintiff's motion to amend at this time and redirects the application to Judge Feuerstein.

### C. Plaintiff's First Amendment Retaliation Claims

Plaintiff alleges that Defendants retaliated against her because she exercised her First Amendment rights to free speech in violation of Section 1983. As noted above, Judge Feuerstein ruled that only the following First Amendment retaliation claims remain:

> [P]laintiffs Section 1983 claim alleging retaliation because she exercised her First Amendment right to free speech (second claim for relief) against Icandela, Cepriano, Hall and Keen in their individual capacity

25

> based upon plaintiff's claims that Icandela "interrogat[ed]" her and issued her a counseling memorandum on June 14, 2011; that Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her about her union activities on July 25, 2011; and that Keen sent a letter to her indicating that her contract would not be renewed in August 2011.

DE 28 at 55 n.17. Thus, Plaintiff's First Amendment freedom of speech claim is only potentially viable as against four of the Individual Defendants, i.e., Hall, Incandela, Cepriano and Keen, as limited above.[6]

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). The Court examines the three elements in turn below.

### 1. Covered Speech

With regard to the first factor, courts conduct a two-step inquiry to determine whether a public employee's speech is protected under the First Amendment. *See Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). First, Plaintiff must demonstrate that "the subject of the employee's speech was a matter of public concern." *Id.* Second, Plaintiff must show that she "spoke 'as a citizen' rather than solely as an employee.'" *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). If the answer to either question is no, Plaintiff's claim fails. *Id.* "If, however, both questions are answered in the affirmative, the court then proceeds to the second

---

[6] To the extent Plaintiff argues that she was terminated in retaliation for protected speech, Judge Feuerstein has already dismissed this claim.

step of the inquiry, commonly referred to as the *Pickering*[7] analysis: whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Id.* (citations and internal quotation marks omitted).

Here, the speech at issue arises out of the Yoga Incident when Plaintiff allegedly told Ms. Buch and the officers that she would like to get Ms. Buch an attorney and a union representative to help her, and that it would be unfair for the police to arrest her for trying to help Ms. Buch obtain proper representation. Plaintiff easily satisfies the second element – that she was speaking as a citizen rather than as an employee – as there is no indication that she was speaking in her capacity as an Admissions Counselor or otherwise speaking out as an employee. With regard to the first element, Plaintiff argues that her speech also implicated a matter of public concern because her speech was "advocating for the constitutional rights of a colleague to have a lawyer and for union representation at a yoga class." Pl.'s Memo of Law at 3-4.

Whether a public employee's speech addresses a matter of public concern is a question of law that "must be determined by the content, form, and context of a given statement, as revealed by the whole record*." Connick v. Myers*, 461 U.S. 138, 147–48, 148 n.7 (1983). A statement is a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146. On the other hand, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment," does not implicate the First Amendment. *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999). Thus, in assessing whether an employee's speech involves a matter of public

---

[7] *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.,* 391 U.S. 563, 568 (1968).

concern, "[t]he heart of the [inquiry] is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)).

Accepting Plaintiff's recitation of the facts as true, the Court finds that Plaintiff's speech addressed a matter of public concern. There is evidence in the record that: (1) Plaintiff advised Ms. Buch and the police that Ms. Buch had a right to counsel and union representation; (2) the police were annoyed that Plaintiff was trying to help Ms. Buch; and (3) at the end of the incident, one of the police officers threatened to handcuff Plaintiff and arrest her, but she told them she was an attorney and it would be unfair for her to be arrested for trying to help someone obtain legal counsel and union representation. Pl.'s Decl. ¶ 21.; Buch Aff.; Amato Aff. Plaintiff was not speaking of a personal grievance; rather, she attempting to vindicate Ms. Buch's constitutional right to counsel and her right to union representation in the face of perceived police misconduct. *See generally Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001) ("'[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.'") (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)); *see also Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public.") (citations and internal quotation marks omitted). Indeed, even the counseling memo issued by Icandela states that "[Plaintiff] made the assumption that the officers were acting improperly." Decl. of Marybeth Incandela, dated Apr. 24, 2015, Ex. 5. Plaintiff's speech reflects that assumption. Although Defendants argue that Plaintiff's speech was directed solely at Ms. Buch and not the officers, the record permits an inference otherwise. Accordingly, the Court finds

28

that viewing the facts in the light most favorable to the Plaintiff, Plaintiff was speaking as a citizen on a matter of public concern during the Yoga Incident.[8]

### 2.    Adverse Action

Under the second prong of the test to establish a prima facie case of First Amendment retaliation, Plaintiff must establish that she was subjected to an adverse employment action. Citing to an ADEA case, Defendants argue that Plaintiff cannot meet this burden because she cannot demonstrate that a "'materially adverse change in the terms and conditions of employment.'"   Defs.' Memo of Law at 18 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).   Defendants, however, mistake the proper standard in defining adverse employment action in the First Amendment retaliation context.   Indeed, the Second Circuit "has never held that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).   Instead, the Second Circuit has applied the standard set forth in *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action."   *Zelnik*, 464 F.3d at 225; *see also Burlington N.*, 548 U.S. at 68.   In doing so, the Second Circuit expressly disavowed application of the *Galabya* standard to First Amendment retaliation cases.   *Zelnik*, 464 F.3d at 225.

Whether an undesirable employment action is adverse "is a heavily fact-specific, contextual determination" and a "plaintiff cannot support such a determination unless he can

---

[8] The Court does not perform a *Pickering* analysis because there has been no assertion by Defendants that they had an adequate justification for treating Plaintiff differently from any other

show that an alleged act of retaliation is more than de minimis."  *Zelnik*, 464 F.3d at 226

(citations and internal quotation marks omitted).   However, a "critical mass" of minor incidents

may support a claim for retaliation.   *Id.* at 227.   Under this standard, "[t]he list of adverse

actions has included harsh measures, such as discharge, refusal to hire, refusal to promote,

reduction in pay, and reprimand, as well as some lesser sanctions, such as failure to process a

teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities,

and express accusations of lying."  *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012); *see*

*also Zelnik*, 464 F.3d at 226 ("Adverse employment actions may include negative evaluation

letters, express accusations of lying, assignment of lunchroom duty, reduction of class

preparation periods, failure to process teacher's insurance forms, transfer from library to

classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which

aggravated teacher's physical disabilities.") (citation and internal quotation omitted).

Here, the Yoga Incident occurred on May 18, 2011.   As a result of Judge Feuerstein's

June 19, 2014 Opinion and Order, the remaining adverse actions Plaintiff allegedly suffered as a

result of her speech are that (1) Incandela interrogated Plaintiff and issued her a counseling

memorandum on June 14, 2011; (2) Cepriano recommended that Plaintiff not be reappointed on

July 21, 2011; (3) Hall counseled Plaintiff about her union activities on July 25, 2011; and (4)

Keen sent Plaintiff a letter indicating that her contract would not be renewed in August 2011.

The Court finds that a reasonable jury could conclude that these actions constitute adverse

actions within this rubric as they would deter an individual of ordinary firmness, situated

similarly to Plaintiff, from exercising her free speech rights under the facts in this case.   *See*

*Ford v. Palmer*, 539 F. App'x 5, 6 (2d Cir. 2013) ("Only retaliatory conduct that would deter a

member of the public based on their needs as an employer.   *Pickering*, 391 U.S. at 568.

similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of [First Amendment] retaliation.") (citation and internal quotation marks omitted).

### 3. Causation

Lastly, to prevail on her claim for retaliation, Plaintiff must establish a causal link between her protected activity and any adverse action. "'To establish causation, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse [ ] action.'" *Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 367 (E.D.N.Y. 2014) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006)). Thus, "[a] retaliation claim will lie even where 'the measures taken by defendants were otherwise justified,' so long as plaintiff can prove that retaliation was a 'motivating factor.'" *Pekowsky v. Yonkers Bd. of Educ.*, 23 F. Supp. 3d 269, 279 (S.D.N.Y. 2014) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)). "A causal relationship can be demonstrated either indirectly by means of circumstantial evidence, including that the protected speech was followed by adverse treatment, or by direct evidence of animus." *Wrobel*, 692 F.3d at 32.

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Cooperative Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Here, the speech at issue occurred on May 18, 2011, and the alleged adverse actions all occurred between five and eleven weeks later, which

fits comfortably within any lines the Second Circuit has drawn. *See, e.g., Cioffi*, 444 F.3d at 168 (2d Cir. 2006) ("Only a short time passed from [plaintiff's protected] speech to the abolition of his job. The Board abolished [plaintiff's] position on February 26, 2002, a little over three months after his November 7, 2001 letter and only three weeks after his January 31, 2002 press conference. We cannot agree that these time periods are too long for any inference of retaliatory motive and causation to be drawn"). Moreover, there is other evidence in the record from which a reasonable factfinder can infer causation. For example, although Plaintiff began working in the Admissions Department in January 2009, there are no written evaluations critiquing her performance until after the May 2011 Yoga Incident. Although Hall states that she was not performing satisfactorily well before her August 2011 evaluation, there are no dated written evaluations to support this claim. Moreover, prior to the Yoga Incident, Plaintiff received a discretionary bonus. Thus, the Court finds that Plaintiff has put forth sufficient evidence regarding causation to withstand Defendants' motion for summary judgment.

### D. Qualified Immunity

Defendants also argue that they are shielded from liability in their individual capacities under the doctrine of qualified immunity. Under this doctrine, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The Court may address these elements in either order. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (holding that courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first).

The Court has already found that the first element is met as the facts, viewed in the light most favorable to the Plaintiff, demonstrate a First Amendment violation. *See Plofsky v. Giuliano*, 375 F. App'x 151, 152-53 (2d Cir. 2010). With regard to the second prong, whether the constitutional right at issue "was clearly established at the time of the alleged violation," a "defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Golodnerv. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (citations and internal quotation marks omitted). "In other words, government officials will be immune from liability if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time." *Demoret v. Zegarelli*, 451 F.3d 140, 148-49 (2d Cir. 2006).

"As an initial matter, 'the First Amendment right of public employees to be free from retaliation for speech on matters of public concern' is beyond debate." *Id.* at 206 (quoting *Reuland v. Hynes*, 460 F.3d 409, 419-20 (2d Cir. 2006)). Here, Defendants argue that they acted reasonably because they knew, *inter alia*, that Plaintiff had not worked out at a prior department at the College and she was unable to understand the nuances of decisioning applications. They further argue that it was reasonable to investigate the Yoga Incident, issue Plaintiff a counseling memo, recommend that Plaintiff not be reappointed, and indicate to her that they were not renewing her contract. Plaintiff disputes these contentions. Defendants' arguments necessarily rest on factual determinations. Accordingly, the Court respectfully recommends that Defendants' motion for summary judgment on the grounds of qualified immunity be denied at this time. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has

33

resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.").

## CONCLUSION

The Court respectfully recommends that Defendants' motion for summary judgment be granted in part and denied in part.   Specifically, the Court recommends that Plaintiff's ADEA claims be dismissed in their entirety, subject to any clarification by Judge Feuerstein as to whether Plaintiff's retaliation claims stemming from her filing with the NYSDHR are still viable, whether via amendment or as originally pled.   The Court further recommends that Defendants' motion for summary judgment be denied with regard to Plaintiff's First Amendment retaliation claims, as limited by Judge Feuerstein's June 19, 2014 Opinion and Order and set forth below:

> [P]laintiffs Section 1983 claim alleging retaliation because she exercised her First Amendment right to free speech (second claim for relief) against Icandela, Cepriano, Hall and Keen in their individual capacity based upon plaintiff's claims that Icandela "interrogat[ed]" her and issued her a counseling memorandum on June 14, 2011; that Cepriano recommended that she not be reappointed on July 21, 2011; that Hall counseled her about her union activities on July 25, 2011; and that Keen sent a letter to her indicating that her contract would not be renewed in August 2011.

DE 28 at 55 n.17.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on all parties.   Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.   Failure to file objections within this period waives the right to appeal the District Court's Order.   *See* 28

U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

*Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d

900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York        **SO ORDERED:**
       November 30, 2015


_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge