UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

AMY L. COLVIN,

                Plaintiff,

against                                       13-CV-3595
                                                          (SJF)(ARL)

HUBERT KEEN, PRESIDENT, IN HIS OFFICIAL
AND INDIVIDUAL CAPACITY, GEORGE LAROSA,
VICE-PRESIDENT IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY, PATRICK CALABRIA, VICE-PRESIDENT
IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,
LUCIA CEPRIANO, PROVOST IN HER OFFICIAL AND
INDIVIDUAL CAPACITY, MARVIN FISCHER, CHIEF
OF POLICE, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY, MARYBETH INCANDELA, DIRECTOR,
IN HER OFFICIAL AND INDIVIDUAL CAPACITY,
JAMES HALL, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY and MALKA EDELMAN, IN HER OFFICIAL
AND INDIVIDUAL CAPACITY,

                                    Defendants
X------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' PRETRIAL MEMORANDUM OF LAW

                                                        Raiser & Kenniff, P.C.
                                                        By: James M. Ingoglia
                                                        300 Old Country Rd., Suite 351
                                                        Mineola, NY 11501
                                                        Phone: 516 742-7600

                                                        *Attorneys for the Plaintiff*

## PRELIMINARY STATEMENT

Plaintiff Amy L. Colvin, by her attorneys, submits this memorandum of law in opposition to Defendants' pretrial memorandum of law. In their memo, Defendants seek to dismiss the first amendment cause of action prior to trial, despite the fact that the Court has previously ruled on the issue submitted. In its decision in regard to the Defendants' summary judgment motion, this Court held that Plaintiff's freedom of speech utterance was a matter of public concern and that the amount and level of retaliatory actions imposed upon Plaintiff were questions for the jury. (*See* Opinion and Order issued by Hon. Sandra J. Feuerstein dated January 19, 2016 (DE[81]) and Report and Recommendation by Magistrate Arlene Lindsay dated November 30, 2015 (DE[76])). It is therefore respectfully submitted that Defendants' latest request for dismissal be denied, as it is a second attempt at a summary judgment motion, which has already been decided in Plaintiff's favor in regard to the free speech issue. *See Holcomb v. Iona College.*, 521 F.3d 130, 137 (2d Cir. 2008) ("The Second Circuit has advised district courts of 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'"). In addition, Defendants' memorandum should be dismissed based upon laches as the trial already began.

### ARGUMENT: PLAINTIFF HAS DEMONSTRATED A VIABLE FIRST AMENDMENT RETALIATION CLAIM

Defendants concede that Plaintiff's free speech was uttered as a citizen and not pursuant to her official duties. Defendants also concede that the decision as to whether the employee's speech is a matter of public concern is a question of law for the court and

not a question for the jury. (*See* Defendants' Pretrial Memo of Law p. 3). It is thus Law of the Case as per the Court's Opinion and Order dated November 30, 2015 (DE[76]) that Plaintiff's speech was a matter of public concern. The speech was a public speech advocating for the constitutional rights of a lawyer and union representation for a fellow employee. Plaintiff argues that she was peaceful and did not touch or obstruct the police in any way during the incident. Plaintiff suffered adverse employment actions when Defendants noticed her for a disciplinary hearing and then interrogated her. As a result of the hearing, the Defendants issued a counseling memo which they placed in Plaintiff's file. Ultimately, she was non-renewed two months after the free speech incident. Plaintiff has shown that the free speech incident caused her initial termination as there were no performance issues identified by Defendant Hall that would justify non-renewal. In fact, the higher than average discretionary bonus of a one thousand dollar raise that was initially approved for Plaintiff by Defendants, was issued to reward exceptional performance. Defendants' alleged reasons for the non-renewal/termination are pretextual as shown below. Defendants' actions have also the chilling effect of dissuading citizens from peacefully enjoying the rights protected by the constitution for fear of arrest by the police and possible loss of liberty (or as in this case, employment).

    I.    **Legal Standard**

As this Court has stated in its decision in this case dated June 19, 2014 (DE[81]) p. 38-39):

> "[T]o prevail on a Section 1983 free speech [or freedom of association] claim, a public employee must demonstrate (1) his speech [or associational conduct] addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection between the speech [or associational conduct] and the adverse

2

employment action[,]" Wrobel, F.3d at 30, "so that it can be said that the speech [or associational conduct] was a motivating factor in the determination." Washington, 373 F.3d at 320.

A plaintiff can establish the causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was [*63] followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Cobb, 363 F.3d at 108. To satisfy the causal connection requirement of the prima facie case, the plaintiff "may not rely on conclusory assertions of retaliatory motive." Washington, 373 F.3d at 321 (quotations and citation omitted); see also Cobb, 363 F.3d at 108 ("[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link.") Nonetheless, since "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint[,] * * * [plaintiff]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Dougherty v. Town of North Hempstead Board of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002).

Once a plaintiff satisfies these factors, the "Pickering balance test" is applied and the government may avoid liability if it would have taken the same course of adverse action regardless of the protected speech. *See Mandell v. County of Suffolk*, 316 F.3d 368, 382-383 (2d Cir. 2003). Defendants, however, cannot avoid liability in this matter.

## II. Plaintiff's Speech Was A Matter Of Public Concern

Defendants agree that the decision as to whether an employees speech is a matter of public concern is a question of law for the court and not a question for the jury. (*See* Defendants Pretrial Memorandum of Law, p. 3). Defendants' argument, in sum and substance, is that Plaintiff's speech was not a matter of public concern because it was "solely directed at Ms. Buch and not at the police officers." (*See id.*, p. 5). Defendants' Appendix A belies this fact, as Plaintiff, at her deposition, states that she talked directly to the officers. The quote of Plaintiff's testimony was "Officers, I would like to get her a union rep," -- "union representation and an attorney." (*See id.* Exh. A, p. 78). A fellow

3

member of the yoga class, Debbie Amato corroborated that Plaintiff was talking to the police about getting Ms. Buch help. (*See* Ingoglia Declaration in opposition to defendants motion for summary judgment, Exhibit KK). Further, Defendants' own witness who was in the class, Sandy Snyder, stated that Plaintiff was talking to the police and asserting Ms. Buch's rights. (*See id.* Exh. LL). Finally, Defendants' other witness, Ms. Kathleen Casserly, the instructor, also witnessed Plaintiff broadcast her attempt to help Ms. Buch to the whole class, including the police who were in the room. (*See id.* Exh. K).

It was therefore a matter of public concern: when the police threaten to arrest a citizen for reminding another citizen of her constitutional rights and try to punish the Good Samaritan who is helping that citizen utilize those rights (particularly one who struggles with emotional and learning issues of her constitutional rights), there can be no other conclusion. Such over-reaching by police is misconduct and has a chilling effect on all citizens.

The police's rendition that Plaintiff's behavior and not her speech was the issue has been strongly contested by Plaintiff in her deposition and sworn declarations as well by key witness testimony. (*See* Plaintiff trial exhibits 46 (statement of Buch) and 47 (statement of Amato) which indicate Plaintiff as calm and the police as loud and agitated).

In any event, in its decision dated January 19, 2016 (DE[81] p. 28), the Court has stated:

> Accepting Plaintiff's recitation of the facts as true, the Court finds that Plaintiff's speech addressed a matter of public concern. There is evidence in the record that: (1) Plaintiff advised Ms. Buch and the police that Ms. Buch had a right to counsel and union representation; (2) the police were annoyed that Plaintiff was trying to help Ms. Buch; and (3) at the end of the incident, one of the police officers threatened to handcuff Plaintiff and arrest her, but

she told them she was an attorney and it would be unfair for her to be arrested for trying to help someone obtain legal counsel and union representation. Pl.'s Decl. ¶ 21.; Buch Aff.; Amato Aff. Plaintiff was not speaking of a personal grievance; rather, she attempting to vindicate Ms. Buch's constitutional right to counsel and her right to union representation in the face of perceived police misconduct. *See generally Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001) ("'[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.'") (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)); *see also Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public.") (citations and internal quotation marks omitted). Indeed, even the counseling memo issued by Incandela states that "[Plaintiff] made the assumption that the officers were acting improperly." Decl. of Marybeth Incandela, dated Apr. 24, 2015, Ex. 5. Plaintiff's speech reflects that assumption. Although Defendants argue that Plaintiff's speech was directed solely at Ms. Buch and not the officers, the record permits an inference otherwise. Accordingly, the Court finds that viewing the facts in the light most favorable to the Plaintiff, Plaintiff was speaking as a citizen on a matter of public concern during the Yoga Incident (supra, Report and Recommendation p. 28 and 29 and Opinion and Order accepting recommendations).

In sum, Plaintiff has shown, and it is Law of the Case as decided by both Magistrate Lindsay and District Judge Feuerstein that the speech by Plaintiff was a matter of public concern.

### III. Defendants' Conduct Constituted Adverse Employment Actions

It is also Law of the Case that there are material facts in dispute as to the extent of the adverse employment actions Defendants undertook against Plaintiff. As Magistrate Lindsay states in her report and recommendation (and as adopted by the District Court), p. 29-30:

> Under the second prong of the test to establish a *prima facie* case of First Amendment retaliation, Plaintiff must establish that she was subjected to an adverse employment action. Citing to an ADEA case, Defendants argue that Plaintiff cannot meet this burden because she cannot demonstrate that a "'materially adverse change in the terms and conditions of employment.'" Defs.' Memo of Law at 18 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Defendants, however, *mistake* the proper standard in defining adverse employment action in the First Amendment

5

retaliation context. Indeed, the Second Circuit "has never held that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). Instead, the Second Circuit has applied the standard set forth in *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik*, 464 F.3d at 225; *see also Burlington N.*, 548 U.S. at 68. In doing so, the Second Circuit expressly disavowed application of the *Galabya* standard to First Amendment retaliation cases. *Zelnik*, 464 F.3d at 225. (emphasis added).

Whether an undesirable employment action is adverse "is a heavily fact-specific, contextual determination" and a "plaintiff cannot support such a determination unless he can show that an alleged act of retaliation is more than *de minimis*." *Zelnik*, 464 F.3d at 226 (citations and internal quotation marks omitted). However, a "critical mass" of minor incidents may support a claim for retaliation. *Id.* at 227.

In the case at bar, Plaintiff contends that Defendants' adverse actions included: refusal to issue a raise that was in place and taken away the day of the free speech incident; reduction in pay (by failure to award a discretionary bonus for the first time since she was hired six year prior); negative evaluations (for the first time in six years since she was hired, and months and after the free speech incident); refusal to promote/reprimand in the form of a counseling memo (chilling her ability to question police misconduct in the future); accusations of inappropriate behavior in the counseling memo and accusations of lying (in fact the plaintiff will show the police were untruthful); and ultimately refusal to rehire.

### A. The Counseling Memo Was An Adverse Employment Action

Defendant Cepriano asked Defendant Incandela, the Director of Human Resources, to "take the necessary steps to investigate and initiate *disciplinary* action in regard to the incident". Before she met with witnesses and Plaintiff, Defendant Incandela

6

arguably made up her mind to find Plaintiff guilty of conduct unbecoming a SUNY employee and interference with a police investigation. As Chief of Police Marvin Fischer and Defendant Incandela were both supervised by Defendant LaRosa and knew each other well, Defendant Incandela had reason to do Mr. Fischer's bidding and make sure Plaintiff was put through the wringer of an interrogation. Defendant Incandela failed to interview witnesses like Deborah Amato and Anna Brewer, who each stated Plaintiff acted professionally, and instead focused on witnesses whose statements were at best equivocal, in order to justify that a formal interrogation was necessary. (*See* Colvin Decl ¶ 21-24, attached to opposition to defendants motion for summary judgment).

As a result, on June 14, 2011, Plaintiff was told to come to Human Resources for a "disciplinary interrogation" based on the above free speech incident and received a five page attachment headed Article 19, Discipline. (*See* Exh. L attached to opposition to Defendants' motion for summary judgment). Defendants concede that Plaintiff was permitted to bring a union representative with her as the outcome of the proceeding could be termination.

On June 27, 2011, Incandela formally disciplined Plaintiff with a counseling memo that was placed in her personnel file and copied to Defendants Hall and Cepriano. Clearly, this was meant to penalize Plaintiff and thereby could and did affect her job security, her tenure, and her ability to receive promotions and raises. If it was not a punishment, then Defendants would not have done an interrogation and a formal written memo. Instead, they could have had an informal conversation and issued a verbal warning (which was an option under SUNY guidelines). Defendants instead began a process of implementing progressive discipline . While Defendants claim a memo is not

7

a disciplinary event, other SUNY documents conflict with that interpretation. The counseling memo was step 2 (step 1 being a verbal warning) on the road to an increase in disciplinary procedures in the future. Plaintiff was then more severely disciplined when Plaintiff was non-renewed. (*See* Colvin Decl ¶ 24 attached to opposition to Defendants motion for summary judgment).

Defendants cite the case of *Tupperware v. Entergy*, 663 F. 3d 556 (2d Cir 2011) to stand for the proposition that a counseling memo is not an adverse employment action. However the memorandum in that *Tupperware* case was rescinded. In addition, that court made a point to say that there may be cases where even rescinded counseling memos may constitute a materially adverse action. In any event, the counseling memorandum in the case at hand was meant not to help Plaintiff improve her performance but as a reprimand and to chill her from engaging in certain first amendment activity, particularly when the police are present.

### B. Hall Pressuring Of Plaintiff To Stop Union Activities On July 25, 2011 Was An Adverse Employment Action

On July 21, 2011, Defendant Cepriano signed a notice stating that Plaintiff should not be reappointed despite the fact that supervisor Jim Hall recommended reappointment and Plaintiff had no negative evaluation. Defendant Cepriano states that the positive comment in Hall's reappointment notice did not speak to all aspects of her job and claims she had a conversation with Hall where he allegedly stated he had concerns about Plaintiff's performance. Defendant Hall cannot verify that this meeting happened before July 21, 2011, but Defendant Cepriano states that Defendant Hall told her an evaluation existed. (*See* Cepriano Declaration attached to Defendants motion for summary

8

judgment, ¶¶ 9-10.). Defendant Hall states that he never talked to Cepriano about such an evaluation, including that it was "completed." No evaluation existed at that time. (*See* Colvin Declaration, attached to Plaintiff's opposition to summary judgment motion, ¶¶ 26, 27).

On July 25, 2011, obviously pressured by his supervisors to build a case against Plaintiff, Defendant Hall, for the first time, starts to criticize Plaintiff's performance. He told Plaintiff that he was afraid she was "stretched too thin." He was concerned about her "activities" in Albany. At that time, she was a union delegate and on the statewide finance committee and veterans committee. Defendant Hall was very agitated about the fact that she was on the union ballot for the committee on professional evaluations and the college review panel. He stated that no one in the Department does that Albany activity and that she better get permission before she accepted a spot on the professional evaluations or college review panels. Defendant Hall also said the administration was concerned about the yoga free speech incident. He made it clear that he wanted her to remain in the office at all times and withdraw from all activities such as the curriculum committee, professional development and union activities. He alluded to this fact in writing on a re-appointment memo. This was in direct contradiction to the written performance program which stated that participation in campus activities and governance committees was highly encouraged. (*See id.* [Colvin Decl] ¶ 28-29 ).

There was no indication on July 25, 2011 that Ms. Colvin's "job was in serious jeopardy" as Defendants contend. (*See* Defendants Summary Judgment Memo of Law, p. 20). The outside campus activities were required on her performance program and Defendant Hall agrees he gave her permission to participate in these activities.

9

Defendant Hall did indicate to Plaintiff that she reduce her outside activities because clearly the administration was upset with her Albany union activities. At no time, however, did he mention job performance issues. Plaintiff contests that at any time, Defendant Hall told Plaintiff she needed to devote less time to outside activities and devote more time to day-to-day duties. Plaintiff contests that Defendant Hall made any statements related to serious mistakes she was making, particularly in regard to decision-making. This assertion was made in hindsight and conveniently fabricated for purposes of Defendants' summary judgment motion (*See id.* [Colvin Decl] ¶ 28).

### *C. Cepriano's, Incandela's, Hall's & Keen's Action Of Terminating Plaintiffs Employment, And Raises And Promotions Were Adverse Employment Actions*

Although clearly told they are mistaken by this Court about the proper standard in defining an adverse employment action in the First Amendment retaliation context, Defendants persist in stating that Plaintiffs initial non-renewal/termination was not an adverse employment action. (*See* Magistrate Lindsay Report and Recommendation, supra, p. 29 ("[T]he Second Circuit "has never held that a public employee plaintiff alleging retaliation in violation of the First Amendment must demonstrate a material change in employment terms or conditions." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006). Instead, the Second Circuit has applied the standard set forth in *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik*, 464 F.3d at 225; *see also Burlington N.*, 548 U.S. at 68."))

The other employees in the yoga class saw that if one challenges the

administration, they may get arrested or fired and if the termination does not stick the first time, the administration will try again. The story of the "yoga pants" incident (as coined by Vice President Calabria) was known far and wide on campus. Additionally, it is not one incident alone but "a 'critical mass' of minor incidents may support a claim for retaliation as discussed above (*supra* pp. 7-8), including, refusal to promote, refusal to issue raises, unwarranted negative evaluations, reprimand in the form of a counseling memo, and ultimately refusal to rehire. In sum, numerous employment actions were suffered by Plaintiff, including those specified above.

## CONCLUSION

Accordingly, Defendants' Pretrial Memorandum of Law should be denied in all respects.

Dated: Mineola, New York
September 13, 2016

Respectfully submitted

**RAISER & KENNIFF, P.C.**
*Attorneys for the Plaintiff*

By: *[signature]*
James M. Ingoglia, Esq.
300 Old Country Rd., Suite 351
Mineola, NY 11501
Phone: 516 742-7600

TO:
Toni E. Logue, Esq.
Assistant Attorney General
200 Old Country Rd., Suite 240
Mineola, NY 11501
516 248-3317