FILED
CLERK
9/28/2016 2:03 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMY L. COLVIN,

                Plaintiff,

  - against-

HUBERT KEEN, President, in his official and
individual capacity; LUCIA CEPRIANO, Provost,
in her official and individual capacity;
MARYBETH INCANDELA, Director, in her
official and individual capacity; and JAMES
HALL, in his official and individual capacity,

               Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
13-CV-3595 (SJF)(ARL)

FEUERSTEIN, District Judge:

      Pending before the Court, *inter alia*, is a pretrial memorandum of law filed by defendants W. Hubert Keen ("Keen"), Lucia Cepriano ("Cepriano"), Marybeth Incandela ("Incandela") and James Hall ("Hall") (collectively, "defendants"), (Docket Entry ["DE"] 105), seeking judgment as a matter of law on plaintiff's remaining claims in this action, which the Court construes to be a motion pursuant to Rule 54(b) of the Federal Rules of Civil Procedure to reconsider so much of its opinion and order, dated January 19, 2016 ("the January Order"), as (1) accepted the branch of the Report and Recommendation of the Honorable Arlene R. Lindsay, United States Magistrate Judge, dated November 30, 2015 ("the Report"), recommending that the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claim pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that defendants retaliated against her for exercising her First Amendment right to free speech be denied; and (b) denied the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First

1

Amendment retaliation claims against them. For the reasons set forth herein, (1) defendants' motion, in effect, for reconsideration of the January Order is granted and, (2) upon reconsideration, (a) so much of the January Order as construed the Report to find, in essence, that there are genuine disputes of material fact with respect to plaintiff's Section 1983 First Amendment retaliation claims against defendants and, as such, accepted so much of the Report as recommends that the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them be denied is vacated; (b) the Report is rejected to the extent it finds that plaintiff was speaking on a matter of public concern during the Yoga incident and insofar as it recommends that the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them be denied; (c) the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them is granted; and (d) defendants are granted judgment as a matter of law dismissing plaintiff's remaining claims in this action, *i.e.*, her Section 1983 First Amendment retaliation claims against defendants, in their entirety with prejudice.

I. Discussion

    A. Reconsideration

Rule 54(b) of the Federal Rules of Civil Procedure provides, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry

of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Nonetheless, the Second Circuit "ha[s] limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quotations and citation omitted); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("Even if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine.")

The law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983); *accord DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992). Accordingly, the Court generally may not revise an earlier decision it made in a case "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm.*, 322 F.3d at 167 (quotations and citation omitted); *see also Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir. 2005) ("[A] district court's discretion to reconsider its own decisions is limited, at least absent an intervening change of law, to circumstances in which new evidence is available, an error must be corrected, or manifest injustice would otherwise ensue.") Specifically, "the doctrine of law of the case permits a change

3

of position if it appears that the court's original ruling was erroneous." *DiLaura*, 982 F.2d at 77 (quotations and citation omitted); *see also Prisco v. A&D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (finding that the district court's departure "from its prior ruling on order to correct an error of law[] . . . is an obviously valid reason for . . . a departure [from the law of the case doctrine].")

B.  Section 1983 First Amendment Retaliation Claims

The Report correctly provides, in relevant part, that the issue of "[w]hether a public employee's speech addresses a matter of public concern is a question of law that 'must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" (Report at 27 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n. 7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983))). However, the Report further provides, in relevant part:

> "*Accepting Plaintiff's recitation of the facts as true*, the Court finds that Plaintiff's speech addressed a matter of public concern. There is evidence in the record that: (1) Plaintiff advised Ms. Buch and the police that Ms. Buch had a right to counsel and union representation; (2) the police were annoyed that Plaintiff was trying to help Ms. Buch; and (3) at the end of the incident, one of the police officers threatened to handcuff Plaintiff and arrest her, but she told them she was an attorney and it would be unfair for her to be arrested for trying to help someone obtain legal counsel and union representation. Pl.'s Decl. ¶ 21. [sic]; Buch Aff.; Amato Aff. . . . Although Defendants argue that Plaintiff's speech was directed solely at Ms. Buch and not the officers, *the record permits an inference otherwise*. Accordingly, the Court finds that *viewing the facts in the light most favorable to the Plaintiff*, Plaintiff was speaking as a citizen on a matter of public concern during the Yoga Incident.[]"

(Report at 28-29) (footnote omitted; emphasis added). In light of the italicized language, the January Order erroneously construed that branch of the Report as finding that there are genuine disputes of material fact requiring a trial with respect to plaintiff's Section 1983 First

4

Amendment retaliation claim, including the issue of whether plaintiff's speech addressed a matter of public concern. (January Order at 7). *See Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted)). As such, I accepted so much of the Report as recommends that the branch of defendants' motion for summary judgment seeking dismissal of plaintiff's Section 1983 First Amendment retaliation claim against them be denied.

However, while the determination of whether speech addressed a matter of public concern "may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003). Accordingly, defendants' motion, in effect, for reconsideration of the January Order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is granted in order to correct the clear error in construing the Report to find that there are genuine disputes of material fact requiring a trial on the issue of whether plaintiff's speech addressed a matter of public concern.

To the extent that the Report actually determines that plaintiff's speech addressed a matter of public concern, I respectfully reject that branch of the Report because, *inter alia*, it "[a]ccept[ed] Plaintiff's recitation of the facts as true" and does not appear to consider all of the evidence in the record, particularly plaintiff's deposition testimony.[1] (Report at 28). However, in

---

[1] The Report relies upon the following evidence with respect to the issue of whether plaintiff's speech addressed a matter of public concern: (a) paragraph twenty-one (21) of plaintiff's undated "Declaration in Opposition to Motion for Summary Judgment" (the "Declaration"); (b) the affidavits of Sherry Buch and Deborah Amato; and (c) the counseling memorandum issued by defendant Marybeth Incandela. (Report at 28). It appears that

determining whether speech addresses a matter of public concern, the facts must be taken from "the whole record" before the Court, *Connick*, 461 U.S. at 147-48, 103 S. Ct. 1684, albeit "while drawing all reasonable inferences and resolving all ambiguities in favor of" plaintiff. *Singer v. Ferro*, 711 F.3d 334, 341 (2d Cir. 2013).

By accepting plaintiff's recitation of the facts in the Declaration as true, instead of considering all of the evidence in the record, Magistrate Judge Lindsay overlooked the significant inconsistencies between plaintiff's deposition testimony and the Declaration. "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (holding that a party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.") *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) ("[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." (quotations and citation omitted)). Thus, rather than accepting plaintiff's recitation of facts in paragraph twenty-one (21) of the Declaration as true, Magistrate Judge Lindsay should have disregarded the Declaration and considered plaintiff's sworn deposition testimony instead.

During her deposition on December 15, 2014, plaintiff testified that while she was

---

Magistrate Judge Lindsay accepted plaintiff's recitation of the facts in paragraph twenty-one (21) of the Declaration as true without considering, *inter alia*, her deposition testimony.

6

attending an on-campus yoga class on May 18, 2011, two (2) police officers entered the class and said that "they wanted to arrest" another person who was attending the class, Sherry Buch ("the Yoga Incident"). (Declaration of Toni Logue ["Logue Decl."], Ex. A at 77-78). Plaintiff then testified as follows:

> "And I said, 'Officers, I would like to get her union rep' – 'union representation and an attorney.' And then we went outside. And then they talked – One officer talked to her. And one officer talked to me. And I continued to say, 'Sherry, we're going to work on getting you a lawyer and a union rep.' And they said to me, 'Well, we're going to arrest you now.' And I said, 'I believe that would be a false arrest.'"

(*Id.* at 78). Plaintiff was not, in fact, arrested. (*Id.* at 88-89).

Plaintiff also testified, (1) that she said, "I would like to accompany her [Ms. Buch] to the police station[,]" (Logue Decl., Ex. A at 83); (2) that she "identified [her]self as an attorney and offered advice and guidance *to the employee being arrested*[,]" (*id.* at 106) (emphasis added); and (3) that she advised Ms. Buch "to wait to say anything until we got an attorney and a union rep." (*Id.* at 86).

Plaintiff testified that at the time of the Yoga Incident, she was not aware that Ms. Buch was under a disciplinary suspension and had been asked to leave the campus and not return; that Ms. Buch never requested that plaintiff represent her as an attorney or help her, (Logue Decl., Ex. A at 80-81, 92); that she "had no knowledge as to why" the police officers were present or Ms. Buch was being arrested, (*id.* at 108); and that she "believe[d] [she] was being a help to Sherry Buch." (*Id.* at 106). Plaintiff testified that she did not "recall what [her] tone was" during the Yoga Incident, (*id.* at 82); that she did not "believe [she] was yelling," (*id.* at 86); and that the officers told her "that the incident did not concern [her] and that [she] should remain uninvolved[.]" (*Id.* at 82). When asked if there was "any other speech that you're claiming that

7

you were discriminated [sic] against for making," plaintiff responded, "No." (*Id.* at 94).

On April 24, 2015, defendants served plaintiff with a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending, in relevant part:

> "Here, Plaintiff cannot demonstrate that her purported speech was made on a matter of public concern, and thus was not entitled to First Amendment protection. Plaintiff testified that she did not know why the police officers were at the yoga class or why Ms. Buch was being arrested, and never assumed that the police officers were acting improperly. . . . Plaintiff has never claimed that the police officers were physically or verbally aggressive with Ms. Buch. Moreover, Plaintiff admits that she was not a member of Ms. Buch's union or Ms. Buch's attorney. . . .
>
> Even assuming that Plaintiff's rendition of what she said during the yoga class incident is accurate, the speech was directed solely at Ms. Buch and *not* at the police officers. . . . Plaintiff's alleged speech was yelling to the arrestee, Ms. Buch, that 'we are going to work on getting you a lawyer and a union rep.'" . . . Such speech alone is patently not of the kind that 'contibute[s] to debate on public issues, the very kind of speech the first amendment was designed to protect.'" *Bieluch v. Sullivan*, 999 F.2d 666, 671 (2d Cir. 1993). The speech was not directed toward the two police officers to complain about their actions and certainly was not speech which criticized the police. Therefore, Plaintiff's claim that her speech was protected by the First Amendment fails in this situation."

(Defendants' Memorandum of Law in Support of Motion for Summary Judgment ["Def. Mem."] at 15-16) (emphasis and brackets in original; citations to deposition transcript omitted)).

In response to defendants' motion, plaintiff filed, *inter alia*, a "Declaration in Opposition to Motion for Summary Judgment" (the "Declaration") which contradicts her deposition testimony, *inter alia*, as follows: (1) in the Declaration, plaintiff indicated that when they "stepped into the hallway, . . . [she] stated that, as a union member, [she] would like to get Ms. Buch a union representative and a legal representative to help her[,]"[2] (Plf. Decl., ¶ 21), whereas

---

[2] Plaintiff's statement in the declaration that she introduced herself as a union member is not only contradicted by her testimony that she identified herself to the officers as an attorney, (Logue Decl., Ex. A at 106), but is also contradicted by Ms. Buch's affidavit, which indicates,

8

during her deposition, she testified that she told the officers in the classroom that she "would like to get her [Ms. Buch] union rep – union representation and an attorney[,]" (Logue Decl., Ex. A at 78), that when they stepped outside the classroom, she "continued to say, "*Sherry* [Ms. Buch], we're going to work on getting you a lawyer and a union rep[,]"[3] (*id.*) (emphasis added), and that at some point during the Yoga Incident she identified herself to the officers as an attorney, (*id.* at 106), not as a union member; (2) in the Declaration, plaintiff indicates that "[a]t the end of the incident, the other officer suggested that this matter was not [her] concern, and threatened to handcuff and arrest [her]," (Plf. Decl., ¶ 21), whereas during her deposition, plaintiff testified that she "continued to say, 'Sherry, we're going to work on getting you a lawyer and a union rep.' And [the officers] said to [her], 'Well, we're going to arrest you now[,]'"[4] (Logue Decl., Ex. A at 78); and (3) in the Declaration, plaintiff claims that after the officer said he would arrest her, she said she "was an attorney and . . . it would be unfair to arrest [her] for trying to help someone get a lawyer and a union representative[,]"[5] (Plf. Decl., ¶ 21), whereas during her deposition, plaintiff

---

*inter alia*, that plaintiff "introduced herself as a friend." (Ingoglia Decl., Ex. J, ¶ 3).

[3] Ms. Buch's affidavit is consistent with plaintiff's deposition testimony, not her Declaration, insofar as Ms. Buch indicates that when they stepped outside of the classroom, plaintiff "reminded [her] that [she] ha[d] a right to a union representative and a lawyer." (Ingoglia Decl., Ex. J, ¶ 3). Indeed, Ms. Buch does not assert that plaintiff directed any speech to the officers during the Yoga Incident other than "introduc[ing] herself as a friend" to the officers when they were still in the classroom. (*Id.*)

[4] Ms. Buch's affidavit is consistent with plaintiff's deposition testimony, not her Declaration, insofar as it indicates that plaintiff "reminded [her] that [she] had a right to a union representative and a lawyer[,]" (Ingoglia Decl., Ex. J, ¶ 3), and "[t]he police then threatened to handcuff [plaintiff] and arrest her." (*Id.*, ¶ 5 [sic] [Ms. Buch's affidavit does not contain a paragraph numbered "4"]).

[5] The Report specially cites to, *inter alia*, this statement in the Declaration to find that plaintiff "was not speaking of a personal grievance; rather, she attempting [sic] to vindicate Ms. Buch's constitutional right to counsel and her right to union representation in the face of

9

testified that she said, "'I believe that would be a false arrest.'" (Logue Decl., Ex. A at 78).

"Generally speaking, a matter of public concern relates to any matter of political, social, or other concern to the community." *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014) (quotations and citation omitted); *accord Singer*, 711 F.3d 334, 339 (2d Cir. 2013). "In examining whether speech is on a matter of public concern, [courts] consider the motive of the speaker, . . . cognizant that speech on a purely private matter [] does not pertain to a matter of public concern and, conversely, that an individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large[.]" *Golodner*, 770 F.3d at 203 (quotations, alterations and citations omitted). "[W]hile motive surely may be one factor in making th[e] determination [of whether speech addresses a matter of public concern], it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009); *see also Reuland v. Hynes*, 460 F.3d 409, 418 (2d Cir. 2006) ("[T]he speaker's motive is not dispositive as to whether an employee's speech relates to a matter of public concern.")

"Speech that, although touching on a topic of general importance, primarily concerns an issue that is personal in nature and generally related to the speaker's own situation[] . . . does not address matters of public concern." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (quotations and citation omitted). "Rather, a topic is a matter of public concern for First Amendment purposes if it is 'of general interest,' or 'of legitimate news interest,' or 'of value and concern to the public at the time' of the speech." *Id.* (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004)). "[T]he primary question for First Amendment purposes is whether the matter is of public concern, not whether the speech was also

---

perceived police misconduct." (Report at 28).

made to serve some private interest." *Nagle v. Marron*, 663 F.3d 100, 107 (2d Cir. 2011).

"In considering a First Amendment claim of deprivation of the right to free speech, [courts] are compelled to examine for [them]selves the statements in issue and the circumstances under which they were made to see whether or not they [] are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." *Piscottano v. Murphy*, 511 F.3d 247, 270 (2d Cir. 2007) (quotations, alterations and citation omitted). If the employee's expressive conduct was not speech addressed to a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.*

Considering plaintiff's statements during the Yoga Incident and the circumstances under which they were made, her speech did not address matters of public concern for First Amendment purposes. Although, as indicated in the Report, "[e]xposure of official misconduct, especially within the police department, is generally of great consequence to the public[,]" *Jackler*, 658 F.3d at 236 (quotations and citation omitted), and "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers[,]" *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *see also Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001), plaintiff does not dispute the legality of Ms. Buch's arrest or claim that the arresting officers engaged, or that she perceived the officers to be engaging, in any misconduct while arresting Ms. Buch. Moreover, since plaintiff testified that she "had no knowledge as to why" the police officers were present on campus or Ms. Buch was being arrested at the time she made the statements, (Logue Decl., Ex. A at 108), she could not have known whether the police officers were acting properly or not in arresting Ms. Buch. Furthermore,

11

plaintiff does not claim that the police officers attempted to stop her from speaking to Ms. Buch or giving her advice until after they had left the yoga classroom and were standing in the vestibule outside the classroom. (*Id.* at 86-97). Accordingly, I respectfully reject Magistrate Judge Lindsay's finding that "[p]laintiff was not speaking of a personal grievance; rather she [was] attempting to vindicate Ms. Buch's constitutional right to counsel and her right to union representation in the face of perceived police misconduct." (Report at 28). Rather, plaintiff was merely imparting unsolicited legal advice and guidance to a colleague who was being lawfully arrested in her presence, which is not the type of speech that is "of general interest" to the public or "of legitimate news interest," *Jackler*, 658 F.3d at 236, and, thus, does not address a matter of public concern for First Amendment purposes.

Moreover, none of the statements made by plaintiff during the Yoga Incident can be deemed critical of the officers' conduct. Indeed, most of the speech was directed to Ms. Buch as unsolicited legal advice and guidance, not toward the two police officers to complain about their actions. Based on plaintiff's deposition testimony, she identified herself as an attorney and directed only three (3) statements to the arresting officers: (1) "Officers, I would like to get her union rep – union representation and an attorney[,]" (Logue Decl., Ex. A at 78); (2) "I would like to accompany her [Ms. Buch] to the police station[,]" (*id.* at 83); and (3) "I believe that would be a false arrest." (*Id.* at 78). Plaintiff does not contend that the officers even responded to those statements, much less retaliated against her after she made them. Rather, after the first statement, plaintiff, Ms. Buch and the officers merely left the yoga classroom; and, despite the other two (2) statements, plaintiff was not arrested and merely returned to the yoga classroom after Ms. Buch was handcuffed and taken to the university police station. Moreover, under the circumstances of

12

this case, the statement, "I believe that would be a false arrest[,]" (Logue Decl., Ex. A at 78), was clearly personal in nature since the threat to arrest plaintiff when she "continued to say, 'Sherry, we're going to work on getting you a lawyer and a union rep[,]'" (*id.*), after they had moved to the vestibule outside the yoga classroom, even if improper, is not "a subject of general interest [] to the public[,]"[6] *Singer*, 711 F.3d at 340 (quotations and alterations omitted), or a "concern to the community." *City of San Diego*, 543 U.S. at 84, 125 S. Ct. 521, 160 L. Ed. 2d 410. In other words, since the alleged threat to falsely arrest plaintiff, even if improper, "had no practical significance to the general public," *Nagle*, 663 F.3d at 107, plaintiff's speech related to that threat was not protected under the First Amendment.

Since plaintiff's speech did not address a matter of public concern, defendants are entitled to judgment as a matter of law dismissing plaintiff's Section 1983 First Amendment retaliation claim against them. Accordingly, the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's First Amendment retaliation claims against them is granted and plaintiff's remaining claims in this action are dismissed in their entirety with prejudice.

II. Conclusion

For the reasons set forth herein, (1) defendants' motion, in effect, for reconsideration of the January Order is granted and, (2) upon reconsideration, (a) so much of the January Order as

---

[6] Indeed, plaintiff seemingly recognized the personal nature of the statement since she attempted to alter her sworn deposition testimony to that effect by indicating in her Declaration that the statement she made after the officer said he would arrest her was that she "was an attorney and . . . it would be unfair to arrest [her] for trying to help someone get a lawyer and a union representative." (Plf. Decl., ¶ 21).

construed the Report to find, in essence, that there are genuine disputes of material fact with respect to plaintiff's Section 1983 First Amendment retaliation claims against defendants and, as such, accepted so much of the Report as recommends that the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them be denied is vacated; (b) the Report is rejected to the extent it finds that plaintiff was speaking on a matter of public concern during the Yoga Incident and insofar as it recommends that the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them be denied; (c) the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's Section 1983 First Amendment retaliation claims against them is granted; and (d) defendants are granted judgment as a matter of law dismissing plaintiff's remaining claims in this action, *i.e.*, her Section 1983 First Amendment retaliation claims against defendants, in their entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendants W. Hubert Keen, Lucia Cepriano, Marybeth Incandela and James Hall and close this case.

SO ORDERED.

                                          /s/
                            SANDRA J. FEUERSTEIN
                            United States District Judge

Dated: September 28, 2016
       Central Islip, New York